John McDowall, Respondent, v. Cornelius Sheehan, Appellant.

The word "creditors," as used in the provision of the General Manufacturing Act (§ 10, chap. 40, Laws of 1848), making the stockholders of a corporation organized under it liable to the creditors of the company until the whole amount of the capital stock has been paid in and a certificate thereof filed, does not include directors of the corporation, and a director to whom the corporation has become indebted cannot enforce the liability so imposed.

This rule applies to one named as a trustee in the certificate of incorporation of the company and who acts as such, although he owns none of its stock; he may legally act as trustee although not a stockholder.

*It seems,* the word "dues" in the provision of the State Constitution (§ 2, art. 8) providing that "dues from corporations shall be secured by such individual liability of the corporators  *  *  *  as may be pre·scribed by law" does not include "dues" to directors.

(Argued October 27, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 18, 1891, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought against a stockholder of a corporation called The Saratoga Union, organized under the General Manufacturing Act of 1848 (Chap. 40) to enforce a claim of plaintiff against said corporation under the provision of said act (§ 10) making its stockholders liable to the amount of their stock until a proper certificate has been made and recorded that all the capital stock has been paid in.

The facts, so far as material, are stated in the opinion.

*J. W. Crane* for appellant. The judgment against the company is not evidence of the debt in an action against a stockholder. (Jones on Corp. 171, § 122; 52 Barb. 399; 103 N. Y. 58; 16 Hun, 65; 118 N. Y. 629.) The action was not brought against the company within one year from the time the cause of action accrued. (Jones on Corp. 12–169, § 24.) In the absence of proof of any contract with the company, the plaintiff being a trustee, incorporator, vice-president, editor and manager, the presumption is that the alleged services were gratuitous. (118 N. Y. 629; 37 id. 317; 48 Hun, 524.) One stockholder or trustee cannot recover against another stockholder in such an action. (3 Hill, 188–191; 43 Barb. 162–165; 13 Hun, 192; 38 id. 492; 38 Barb. 616.) It was competent and material for the defendant to show the intimate relations between the plaintiff and Judson. (5 Den. 106; 6 N. Y. 346; 84 id. 248.) The defendant could have recovered the check or its proceeds from the plaintiff on discovery of

the fraud. (4 Hun, 802; 66 N. Y. 558; *Bedell* v. *Bedell*, 37 Hun, 419; *Jones* v. *Jones*, 6 N. Y. S. R. 736.) There was no contract proven between the plaintiff and the corporation other than that set out in the judgment-roll against the company. And no ratification by the company of that contract. (16 Hun, 65; 38 Barb. 616; 118 N. Y. 484; 103 id. 76; 14 Hun, 483; 16 id. 65; 84 N. Y. 190; 52 Barb. 399.)

*Charles S. Lester* for respondent. The finding " that the defendant Cornelius Sheehan was a stockholder in said corporation to the amount of one thousand dollars," is fully sustained by the evidence. (*McNeil* v. *T. N. Bank*, 46 N. Y. 331; *Cutting* v. *Dameral*, 88 id. 414; *Jackson* v. *Underhill*, 52 id. 203.) The finding that " the Saratoga Union is indebted to the plaintiff in the sum of $2,153.10, with interest," is fully sustained by the evidence. (*Bailey* v. *B. R. Co.*, 14 Hun, 483; *Gould* v. *Board of Education*, 34 id. 16; *Sanborn* v. *Lefferts*, 16 Abb. Pr. [N. S.] 42, 56; *Jackson* v. *N. Y. C. R. R. Co.*, 2 T. & C. 653; 58 N. Y. 623.) The defendant claimed on the trial that plaintiff could not maintain this action because one stockholder could not sue another; this is untenable. ( *W. & B. I. Works* v. *Chittenden*, 4 Bosw. 406; *Sanborn* v. *Lefferts*, 58 N. Y. 179.)

EARL, J. In May, 1887, a corporation called the Saratoga Union was organized under the General Manufacturing Act of 1848 and the acts amending the same, for the purpose of publishing a newspaper in Saratoga Springs. The certificate of incorporation was signed and acknowledged by Benjamin F. Judson, Edmund J. Huling, John W. Howe, R. F. Knapp, and the plaintiff, who thus became the incorporators, and they were named in the certificate as the trustees for the first year. On the tenth day of June thereafter, at the first meeting of the incorporators, Huling was chosen president of the corporation, the plaintiff vice-president and Judson treasurer and general manager, neither of such persons at the time being stockholders or subscribers for stock. Prior to the incorpora-

tion the plaintiff and Judson, who were relatives, were engaged
in business together.  They were the chief promoters of the
incorporation, and one of the purposes for forming the cor-
poration was to give them employment.  Immediately after-
the corporation was launched the plaintiff was employed as
the editor of the newspaper and he assisted in carrying on and
managing the same, and his compensation, fixed by Judson
and himself, was $20 per week.  The business of the corpora-
tion was carried on until October, 1888, when it became
insolvent, and it thereafter ceased to do any business.  During-
all that time, seventy-three weeks, the plaintiff continued in
the employment of the corporation, and received to apply upon
his stipulated compensation only $20, the payment for one
weeks' service.  During that time he continued vice-president
and a director of the corporation, and he attended all the
meetings of the directors and was active in the management of
the corporation.  In July, 1887, he was present at a meeting
of the directors, at which it was resolved to mortgage all
the property of the corporation to secure a person for indorsing
a note for it.  In February, 1888, he was present at a meeting
of the directors, at which it was resolved that the corporation
should execute to Mrs. Judson a mortgage covering "the
franchises, property, rights, liberties, presses, engine and boiler,
folder, type, type cases, furniture and all property owned by the
corporation, except paper and ink," to secure her for $7,000.
At the same meeting it was resolved that the secretary be
authorized and directed to execute to Mrs. Judson an assign-
ment or conveyance of the Associated Press franchise owned
by the corporation, as additional security for the same sum.
In July, 1888, at another meeting of the directors, at which
the plaintiff was present, it was resolved that the corporation
hire from Mrs. Judson the presses, material and type comprising
its job office department, at the rate of one hundred dollars
a year.

The capital stock of the corporation specified in the certifi-
cate filed was ten thonsand dollars, divided into shares of one
hundred dollars each.  The capital was never all subscribed

for or paid in, and no certificate was made as required by sec-
tions 10 and eleven of the act of 1848. The plaintiff brought
an action against the corporation to recover the amount due
him as a creditor thereof, and he recovered judgment and
issued execution thereon which was returned wholly unsatisfied.
He then commenced this action to enforce the liability of the
defendant as a stockholder under section 10 of the act, which
provides that all the stockholders of such a corporation shall be
severally individually liable to the creditors thereof to an
amount equal to the amount of stock held by them respectively
for all debts and contracts made by the corporation, "until the
whole amount of capital stock fixed and limited by such com-
pany shall have been paid in and a certificate thereof shall
have been made and recorded as prescribed in the following
section."

The defendant's relation to the company grows out of the
following facts: Before the corporation was formed he was
solicited to take stock therein, and he promised to aid the
enterprise. In May, 1887, before the certificate of incorpora-
tion was filed, he went to Judge Putnam and made his check
payable to his order for the sum of $1,000 stating to him that
he designed it as a gift to help the enterprise, and directing
him not to pay the amount to the corporation until he, the
defendant, would not incur any further liability. The defend-
ant did not part with the check with any other or different
intention than that expressed in his directions to Putnam; and
Putnam intended to aid the enterprise in a similar manner by
advancing the sum of $500 on the same or similar terms.
Previous to the 7th day of July, 1887, Judson, the director
above named, went to Putnam and stated and represented to
him that eighty-five shares of the capital stock had been sub-
scribed, or paid for, whereas there had not been any of it sub-
scribed or paid for. Putnam believed the statement to be
true and communicated it to the defendant; and thereafter on
the 7th day of July he made his check, with the assent of the
defendant to the order of the plaintiff for the sum of $1,500,
which check included the check left with him by the defendant

as above stated. Putnam then received two certificates of stock which had on that day been made out to the plaintiff, one for $1,000 and the other for $500, each of which contained on the back thereof a blank assignment signed by the plaintiff. Putnam would not have parted with the check if he had not believed the statements made to him by Judson to have been true. The defendant did not learn of the falsity of the statements upon which the check was procured until after the commencement of this action. The plaintiff voted on the stock the same after as before the blank assignment thereof, and continued to act as such stockholder so long as the corporation existed; and the certificate of stock continued in his name on the stock book of the corporation the same after as before the assignment, and the defendant's name never was entered on the book in any manner. It does not appear that the plaintiff personally had the benefit of the $1,500 paid by Putnam, and he never held the certificates of stock made out to him except to sign his name to the blank assignment on the back thereof, and he never had any other stock in the corporation. After the certificate for the ten shares was delivered to Putnam, he sent or delivered it to the defendant by whom it was laid away. The defendant never attended any meeting of the stockholders and never acted as a stockholder and never received any notice of a meeting of the stockholders.

It is apparent from these facts that the plaintiff's recovery against the defendant is very inequitable, and we believe the law will not uphold it.

While the language of section 10 of the act of 1848 is broad and general that all stockholders of such a corporation shall be liable to creditors thereof to the amount of the stock held by them respectively for all debts and contracts made by the corporation, until the whole amount of its capital stock shall have been paid in, and the proper certificate shall have been made and recorded, who are meant by "the creditors of the company?" That is the question now to be answered.

It is provided in section 2 of art. VIII of our State Constitution that "dues from corporations shall be secured by such

individual liability of the corporators and other means as may be prescribed by law." Can it be supposed that the framers of the Constitution in drafting this section had in mind "dues" to the directors of corporations, and that the directors were objects of their solicitude whose protection should be guaranteed by the fundamental law? In 1846 private corporations for all kinds of ends were rapidly increasing in this state, and the statesmen of that day thought it wise and sound public policy that the creditors of such corporations should in some cases and to some extent have, besides the corporate responsibility, some security in the individual liability of the corporators. But that public policy plainly had reference to outside creditors of a corporation dealing with and trusting it, and generally ignorant of its precise financial condition. It could have no relation to the directors of a corporation who manage its affairs and can generally know its condition, who create the debts and can generally protect themselves, if creditors, before disaster overtakes them. The constitutional provision and the laws enacted to give effect to the policy embodied therein were not intended for the protection of the debt makers, directors who constitute themselves creditors of the corporation, and then attempt to unload their burden upon stockholders whose interests were committed to their hands. We think, by the fair construction of the language used in section 10, the debt makers are excluded from its scope, as well as from the policy which it was intended to promote. Suppose the whole capital stock of this corporation had been paid in, but the certificate had not been made and recorded, the plaintiff would still have been a creditor; but would it be contended that he would still be entitled to the protection intended by the section to be secured to the creditors of the corporation? If not, why would he not? We answer, simply because the word "creditors" as there used does not include a creditor thus situated. Even if such a creditor can be fairly said to be within the general language used, he is clearly without the policy of the law, and so plainly not within the intention of the law makers, that the law should be held not to cover his case, and for this view of the statute

the case of *Riggs* v. *Palmer* (115 N. Y. 506) is ample authority.

The statute should not be so construed that the directors of a moribund corporation could constitute themselves creditors for salaries or wages, and thus impose liabilities upon confiding and innocent stockholders.

The plaintiff having been named as a trustee in the certificate of incorporation, could legally act as trustee, although he did not in fact own any stock. (*Davidson* v. *Westchester Gas Light Company*, 99 N. Y. 558.) But, in any event, having acted as a director and enjoyed all the privileges and advantages of that position, and wielded its powers, for the purpose now in hand, he must be held a director.

We have assumed, as we ought, upon the findings of the trial term, that the defendant, under all the circumstances, holding the certificate of stock, became the legal and equitable owner thereof, and that thus he would have been liable to what we have termed the outside creditors of the corporation. (*Johnson* v. *Underhill*, 52 N. Y. 203.)

Our conclusion, therefore, is that the plaintiff must be defeated in his action solely because he was a director of the corporation, and thus not entitled to the protection which the law intends to secure to the creditors of such a corporation; and as this ground of defense is fundamental and cannot be obviated by any proof which it seems possible for him to furnish, we can perceive no purpose to be served by a new trial.

The judgments should, therefore, be reversed and the complaint dismissed, with costs.

All concur, except Ruger, Ch. J., and Andrews and O'Brien, JJ., not voting.

Judgment accordingly.