# EBERT-HICKEN COMPANY v. SCOTT-BEVIER IRON MINING COMPANY.[1]

March 28, 1929.

No. 27,170.

[1]Reported in 224 N. W. 454.

*McClearn & Gilbertson,* for appellants.
*Theodore Hollister,* for respondent.

HOLT, J.

The appeal is from an order allowing the claim of A. M. Bevier against an insolvent corporation.

In March, 1910, the Scott-Bevier Iron Mining Company was incorporated under the laws of this state. Some four years previously a mining lease had been obtained from the state to certain land near Tower, Minnesota, by the nine persons who became stockholders in the corporation. These parties had done some exploring upon the land at considerable expense. The corporation took over the lease, and in consideration thereof the nine persons received 300,000 shares of the capital stock of the corporation of the par value of one dollar per share. The balance of 200,000 shares constituted treasury stock.

The two largest shareholders were Bevier and Scott, each holding 87,500 shares. A. M. Bevier became the president and has remained such. He had charge of all operations, conducted and supervised the business of the corporation. To raise the money needed to continue the lease, pay taxes, and explore for the hoped for ore by drilling, it was contemplated that treasury stock might be sold. But it was found enough could not be sold, even when the price was reduced to 77 cents a share, to carry on. A. M. Bevier then undertook to sell three shares for a dollar, turning the money thus obtained into the treasury of the corporation, or in other words paying therewith its current bills. There is uncertainty in the evidence whether the stock thus sold by Bevier at three shares for a dollar was all his stock, or whether or not one share thereof was treasury stock and the one share was contributed by Scott. However on the books of the company the money raised by Bevier from the sale of three shares for a dollar was credited to him under a loan account. This loan account amounted on March 21, 1921, to

$22,171, at which time, at a stockholders' meeting, a resolution was unanimously adopted accepting Bevier's offer to take 22,171 shares of the unissued stock of the corporation in payment of this account. The testimony indicates that he also got an equal number of shares from the Scott heir. Since that date money has been raised by Bevier by sale of stock at three shares for a dollar to meet current expenses, and another loan account in his favor in the sum of $9,005 appeared upon the books when the corporation went into the hands of the receiver and is included in the claim allowed. This item is contested.

When the corporation was organized the president's salary was fixed at $100 per month and expenses "until further order." On March 21, 1911, the board of directors, on motion, fixed the president's "salary for the ensuing year" at $125. Since then the minutes of the corporation show nothing in respect to the amount of his salary. The books show that he drew as upon salary about $50 a month and certain expenses. Bevier's salary and expense account was kept separate from the loan account hereinbefore referred to. Bevier claims that this account was never adjusted or paid up; that he merely drew enough to subsist, usually about $50 a month and some for expenses, so that at the time the receiver was appointed there was due him $16,532.31 and interest on yearly balances amounting to $7,568.70, which was added pursuant to a resolution of the stockholders at a meeting held March 19, 1923. These two items are disputed. The three items above mentioned with accrued interest make up the claim of Bevier as allowed in the sum of $36,193.09, as of August 29, 1928.

Appellants contend that Bevier, as president and general manager intrusted with the entire operations of the corporation, stood in a confidential relation to the stockholders precluding him from contracting with the corporation. In short, that no quasi contract for money loaned can arise from the fact that he advanced funds to pay corporate debts. That Bevier stood in a fiduciary relation to the corporation and its stockholders must be conceded. He may not profit by that relation. Equity will scrutinize dealings between

the fiduciary and his cestui que trust. And whenever such dealings are the basis of a claim by the fiduciary the burden is on him to show that they were fair, made in good faith, upon an adequate consideration and a full understanding. This is the import of Sisk v. Jordan Co. 94 Conn. 384, 109 A. 181, 519, cited by appellants. Our own decisions are to the same effect. Janney v. Minneapolis Ind. Exp. 79 Minn. 488, 82 N. W. 984, 50 L. R. A. 273; Taylor v. Mitchell, 80 Minn. 492, 83 N. W. 418.

Some of appellants were directors and officers of the corporation from its organization on. These as well as all the stockholders knew that they became such solely on hope. The corporation had only a state lease of no value unless by drilling iron ore might be discovered. There were no funds with which to carry on. The treasury stock in sufficient amount could not be sold even when it was offered at a discount. Bevier was not only charged with carrying on the drilling but with raising the money needed to do it. By disposing of his own stock, as he claimed, at three shares for a dollar he had managed to advance to the corporation for drilling and necessary expenditures $22,171 on March 21, 1921, when there was the stated settlement. Thereby he received one share from the corporation and one share from the Scott heir for every share of his own that he had sold. Although there was no agreement between Bevier and the corporation as to future advances or loans, all concerned knew that money to carry on thereafter must necessarily come from the sale of stock, and with no hope that treasury stock could be sold unless a bonus was given, as in the past, of two shares for every one sold at par.

After the settlement of the loan account, Bevier started a new account for moneys loaned or furnished. There was no direct or express direction for him to do so nor any agreement to repay in money. The corporation had no means by which to pay except by its treasury stock unless iron ore was found. No one was as greatly interested in the venture as Bevier and the Scott heir. These two stockholders had concluded by the settlement just made to contribute each one share as bonus to each share of treasury stock for.

the needed money raised by Bevier to carry on the past explorations for ore. What more natural than that these appellants, stockholders and officers of the corporation, should expect and rely on the past course of conduct of Bevier that for the money raised by the sale of stock he should be reimbursed in the same way and not by cash. This understanding is strengthened by the fact that doubtless neither they nor Bevier then believed that by buying a share of stock the purchaser incurred any liability for corporate debts or that by selling such share the seller to that extent reduced his liability to pay the same. It appears to us that, in absence of some express action by the stockholders at a regularly called meeting, the only permissible inference from the past dealings between Bevier and the corporation would be that for money raised by sale of stock and placed by him under the so-called loan account subsequent to the settlement of March, 1921, reimbursement should be made in treasury stock, one share for two shares contributed by him and the Scott heir. Under the peculiar fiduciary relation in which Bevier stood to appellants and the Scott heir, he could in fairness ask no more when the continued outlay of money was simply taking a chance in finding ore. It may also be said that the manner in which the books of the corporation were kept, including the stock register and stock books, makes it almost impossible to trace the source of the amounts entered upon this loan account wholly to a sale of Bevier-owned stock. The item on account of this loan account should be eliminated.

The attorney for appellants with great skill and persistence endeavored to prove that there was an agreement and understanding between appellants and Bevier that he should receive shares of stock in payment of the personal account, at least in so far as it includes salary in excess of $50 per month for subsistence. We cannot hold that the testimony adduced was such as to compel the trial court to conclude that such an agreement existed. The same must be held in respect to the contention that Bevier is estopped as against appellants to assert a claim in this proceeding on the ground that he sold them stock on the representations that no debts or liabilities existed against the corporation.

As before stated, appellants were either directors or officers of the corporation or close friends of its officers and directors. The minutes show a majority of the stock represented at stockholders' meetings. The operations of the corporation were not extensive. All understood the way in which the undertaking had to be financed and the difficulty thereof. Bevier devoted his whole time to the enterprise. None of appellants or any other stockholder took any part in the actual work. It is conceded that Bevier conducted the explorations faithfully and economically. It is perhaps true that everyone, including Bevier, was ignorant of the fact that the shareholders were subject to the so-called stockholders' double liability until the decision of this court on the former appeal in this receivership. Ebert-Hicken Co. Inc. v. Scott-Bevier I. Min. Co. 173 Minn. 1, 216 N. W. 325. The salary having been fixed "for the ensuing year" in March, 1911, at $125, and there having been no change in Bevier's work, the books and subsequent reports of the treasurer showing, at least since 1917, regular entries of salary at $125 per month in favor of the president and the recognition of the obligation of the corporation to him upon this account when, because of his past forbearance as well as any thereafter extended, it agreed on March 19, 1923, to pay interest thereon yearly, we think the trial court was well fortified in his conclusion that both principal and interest, as agreed, should be allowed. We think Jezeski v. N. E. Inv. Co. 163 Minn. 165, 203 N. W. 978, cited by appellants, justifies the conclusion.

Furthermore, this is not a case where the authority of a board of directors is involved or questioned. It was the act of the stockholders themselves. It evidenced more than "a quasi contract." Had the corporation been solvent but temporarily hard up, the fairness and justice of the agreement would be apparent to everyone. It is only the ignorance of all concerned of the stockholders' double liability that imposes an unanticipated obligation or burden which bears heavier on appellants than on Bevier by reason of the fact that, since they acquired and he disposed of shares, their constitutional liability increased and his decreased. In this situation there

would be a strong temptation to follow McDowall v. Sheehan, 129 N. Y. 200, 207, 29 N. E. 299, relied on by appellants, which holds that the law "should not be so construed that the directors of a moribund corporation could constitute themselves creditors for salaries or wages, and thus impose liabilities upon confiding and innocent stockholders." But this court long ago declined to follow this decision. It so did expressly in Janney v. Minneapolis Ind. Exp. 79 Minn. 488, 82 N. W. 984, 50 L. R. A. 273, and adhered to Oswald v. Minneapolis Times Co. 65 Minn. 249, 68 N. W. 15, which had held that "the constitutional individual liability of stockholders for corporate debts extends to debts due creditors who are also stockholders, as well as to debts due those who are not members of the corporation." Mendenhall v. Duluth D. G. Co. 72 Minn. 312, 75 N. W. 232.

We think the learned trial court rightly allowed the claim based upon the personal or so-called salary account and interest computed thereon under the action of the stockholders' annual meeting of March, 1923, but that the item of $9,005 from the loan account should not have been allowed.

The order is reversed with direction to the court below to enter an order allowing the claim in accordance with this opinion.