## BOYUM v. JOHNSON et al.

### In re FERGUS FALLS WOOLEN MILLS CO.

No. 12062.

Circuit Court of Appeals, Eighth Circuit.

April 13, 1942.

Henry Nycklemoe, of Fergus Falls, Minn., for appellant.

Leonard Eriksson, of Fergus Falls, Minn. (James S. Eriksson, of Fergus Falls, Minn., on the brief), for appellees.

Before SANBORN and JOHNSEN, Circuit Judges, and NORDBYE, District Judge.

JOHNSEN, Circuit Judge.

Iver J. Boyum, the managing officer and controlling stockholder of the bankrupt corporation, has appealed from the order of the District Court made upon a review of his claims against the bankrupt estate.

The Referee had allowed Boyum's claims in the sum of $49,210.58, without any set-off on the part of the bankrupt corporation. Of this amount, $424.11 was for services as secretary of the corporation $1,213.80 was for salary as general manager, and $47,572.67 was for cash advances made to the corporation, evidenced by promissory notes. A minority stockholder owning three shares of capital stock and a general creditor having a claim of $252.-50 petitioned for review.

On a review, the District Court affirmed the allowance of the claim for services as secretary, the claim for salary as general manager, and part of the claims upon the notes, fixing the total amount of the corporation's indebtedness to Boyum at $33,678.33. It disallowed Boyum's claim upon a $2,500 note, as being barred by the statute of limitations, and upon a $10,000 note, as being without consideration. It held further that the corporation was entitled to set-offs against the indebtedness due Boyum, for unlawful bonuses received by him during the years 1919 to 1925, together with interest thereon, in a total sum of $40,636; for the agreed purchase price of the "Leader Store", bought from the

corporation in 1930, together with interest thereon, in a total sum of $24,602.27; and for payments applied by him upon the $10,000 note which was without consideration, together with interest thereon, in a total sum of $3,652.95. These set-offs aggregated $68,891.22, and, since this amount was in excess of the corporation's indebtedness to Boyum, the court held that he was not entitled to receive any dividends out of the estate. It accordingly directed him to refund to the Trustee a dividend payment of $2,545.17, which had been made to him under an order of claim allowance, entered more than a year prior to the institution of the present proceedings before the Referee for reconsideration of his claims. The court further required him to surrender to the Trustee, as unlawful preferences, the sum of $2,583.70, received and applied by him as payments upon his notes within four months preceding the filing of the petition in bankruptcy.

The exhaustive opinion of the District Court is reported in Re Fergus Falls Woolen Mills Co., 41 F.Supp. 355, and it will be unnecessary to repeat here many of the facts set out therein

We think the District Court properly disallowed the $2,500 and $10,000 notes as claims, and correctly fixed the total amount of the indebtedness owing to Boyum from the corporation at $33,678.33. On the record before us, however, we believe that the court erred in holding that the bonuses received by Boyum, for the years 1919 to 1925, and the purchase price of the Leader Store bought from the corporation in 1930 constituted a proper set-off against the amount for which Boyum's claims were allowed.

We should say at the outset that anything that may be owing to Boyum on his note claims will be ordered subordinated to the payment of the claims of the other general creditors. The record shows that the bankrupt was essentially a one-man corporation. Boyum was the controlling stockholder and virtually ran the affairs of the corporation as his own. His general dealings with the corporation were not on the arm's length plane of the other creditors. The cash advances which he made were apparently necessary to supply a deficiency in working capital. From their amounts, duration, and continued need, they were hardly mere ordinary commercial incidents, but rather part of a plan of permanent, personal financing, to avoid the necessity of increasing the capital of the corporation. Boyum's note claims, therefore, cannot be said to occupy an equal equitable position with the other general claims and should accordingly be subordinated to them. See Pepper v. Litton, 308 U.S. 295, 307-311, 60 S.Ct. 238, 84 L.Ed. 281.

With this subordination made, the controversy here appears to become one wholly between Boyum and a group of minority stockholders. The claims of other general creditors, outside of Boyum, total only $1,759.70, and from the amount of the initial dividend payment made and the portion thereof which Boyum can be required to refund to the Trustee, as well as the indication of further unliquidated assets in the record, it seems clear that these general creditors will be paid in full. That is as far, of course, as their right or interest in this proceeding can go. We advert to this fact here, because, in considering the relationship of Boyum's claims solely to other stockholders, there appears to be an element of acquiescence involved as to the portion of the set-off allowed by the District Court for bonus payments made to Boyum, which we think is controlling on that phase of the controversy. We shall discuss the matter more specifically later.

As to the $2,500 note, Boyum failed to show the date when either of two payments of interest, upon which it was necessary for him to rely, was actually indorsed upon the instrument, and so, as the District Court held, failed to establish a tolling of the statute of limitations. The Minnesota rule is that an indorsement upon a note is not such prima facie evidence of payment as will toll the statute of limitations, unless the holder shows by proof dehors the indorsement that it was actually made at a time when it was against his interest to make it. Riley v. Mankato Loan & Trust Co., 133 Minn. 289, 158. N.W. 391; Young v. Perkins, 29 Minn. 173, 12 N.W. 515.

As to the $10,000 note, the District Court found from the bills payable register and the corporation's financial statement for the year 1928, when the note purported to have been given, that there was an unexplained discrepancy of $9,991.25 between the amount of cash which the corporation appeared to have received from Boyum during that year and the amount of notes which the corporation

had issued to him. However honest Boyum's expressed recollection and belief may have been, the court was not bound to accept his general testimony that the note represented an actual advance of cash made to the corporation at the time, as against the failure of the corporation's records to show receipt of $9,991.25, whose only traceable source, if received, would appear to have been the notes which the corporation had issued to Boyum. The court was therefore justified in holding that he had failed to establish the necessary consideration for the $10,000 note. An officer of a bankrupt corporation, because of his fiduciary relationship, has the burden of satisfying the court fully of the existence and sufficiency of the consideration for any claim which he may have against the corporation, including one upon a negotiable instrument. Pepper v. Litton, supra, at page 306 of 308 U.S., 60 S. Ct. 238, 84 L.Ed. 281; Ebert Hicken Co. v. Scott-Bevier Iron Mining Co., 177 Minn. 72, 224 N.W. 454, 455; 3 Fletcher Cyclopedia Corporations, Permanent Edition, § 952.

 As to the bonus payments made to Boyum during the years 1919 to 1925, which the trial court allowed as a set-off against the amount of his established claims, such payments or most of them doubtless would have been recoverable in an action seasonably brought by the minority stockholders. Under Minnesota law, as against existing creditors or stockholders, a corporation cannot make bonus payments to officers, which are not a matter of contractual obligation. Jones v. Morrison, 31 Minn. 140, 16 N.W. 854. Such payments are regarded as without consideration, where the amount of compensation has been fixed by previous agreement and the services have been performed. It is only where the amount of an officer's compensation has either expressly or impliedly been left open contractually that the board of directors has the legal right to make any allowance after the duties of the office have been performed. Jezeski v. Northeast Investment Co., 163 Minn. 165, 203 N.W. 978.

 But this, of course, does not mean that subsequent extra allowances of compensation to officers cannot be made, where no rights of creditors are involved and where the stockholders consent. The consent of stockholders to such allowances, however, will not be presumed during the statute of limitations' period, but must be affirmatively established. But after the expiration of the statute of limitations' period, the situation must reasonably be held to be reversed. A sound recognition of the purpose and policy of the statute of limitations requires that the stockholders then must be presumed to have consented to any such purported action on the part of the board of directors, and that an attacking stockholder must be able to show that he has never consented to the allowances, and that he has been without knowledge thereof, which would have caused the statute to run against him.

Here, the stockholders have wholly failed to show that they did not consent to the allowances which Boyum received, other than by their institution of this proceeding some fifteen or twenty years after the bonuses had been paid. The District Court declared that the evidence was conclusive that the stockholders had no knowledge of the bonus payments "prior to the examination of the bankrupt in this proceeding". 41 F.Supp. at page 362. We have carefully searched the record and are unable to find anything in the evidence that seems to us soundly to support this conclusion.

Only three of the minority stockholders testified in this proceeding. Two of them did not disclose when they had become stockholders. Johnson, the petitioning stockholder, showed by his testimony that he had been a stockholder during part of the time that the bonuses were being paid. All three admitted that they had been in the habit of attending the annual stockholders' meetings, at which the financial statements of the corporation were submitted for consideration, but indicated that they had not paid much attention to them. These financial statements during the period in question were shown to have included the amount of Boyum's bonus each year, in the salaries which the corporation had paid. Boyum testified in substance that the bonus payments had been considered at the stockholders' meetings. The amount of the bonus allowed during each of the seven years involved was $3,000, which could probably not be said to be unreasonable in amount, in view of the limited salary of $3,600 which Boyum was drawing for managing the rather large-scale operations of the corporation. There does not appear to have been any likely reason why a stockholder would at that time have objected, since dividends

were then regularly being paid. The dissatisfaction here with the past actions of the directors and officers appears only to have arisen after dividend payments had been obliged to be terminated.

Boyum admitted on cross-examination that he had not personally attempted to communicate the fact of the bonus payments to the stockholders individually, and, while this circumstance might have been corroborative, if there had been any other affirmative evidence, lack of knowledge could hardly fairly be made to rest upon the narrow fact alone that the stockholders had not been furnished such an extraordinary personal bulletin or communication from Boyum. The bonus allowances were regularly spread upon the minutes of the board of directors' meetings, and there is nothing to indicate any fraudulent attempt at concealment. But most controlling here, it seems to us, on the right to escape the presumptive repose of the statute of limitations, is the fact that not one of the three stockholders who testified saw fit to make any statement on the witness stand as to whether he did nor did not know of the bonus payments to Boyum. Each undertook to assert specifically that he had no knowledge of the existence or amount of Boyum's loans, in spite of the fact that this indebtedness had regularly been made to appear upon the financial statements submitted at the annual stockholders' meetings. Each was utterly silent, however, on whether he similarly claimed to be without knowledge of the bonus allowances to Boyum.

On this state of the record and under the purported repose of the statute of limitations, it would have to be presumed here, not that the stockholders did not know, but rather that they had such knowledge and acquiesced in the payment. See Hodgson v. Keppel, 211 Iowa 795, 232 N.W. 725; Paine v. Dodds, 14 N.D. 189, 103 N.W. 931, 116 Am.St.Rep. 674. In this situation, the bonus payments could not properly be made a matter of set-off against Boyum's indebtedness, since there could be nothing illegal or inequitable in his receipt or retention of them, if the stockholders had acquiesced or assented. A bankruptcy court will not undertake to conduct an inquisition into and to readjust the fifteen or twenty year old actions of a board of directors in matters of corporate compensation, on which the statute of limitations has placed a presumptive repose, if the complaining stockholder does not unequivocally demonstrate that he is outside the bar of the statute. See 2 Mason's Minn.St.1927, § 9191; Williams v. Davis, 182 Minn. 186, 234 N.W. 11; Goodspeed v. Goodspeed, 273 Mich. 87, 262 N.W. 742. This is true whether the situation be one of technical statutory limitation or of analogous equitable laches. Backus-Brooks Co. v. Northern Pac. Ry. Co., 8 Cir., 21 F.2d 4, 12.

As to the purchase price of the Leader Store, which the trial court similarly allowed as a set-off against the amount of Boyum's indebtedness, it seems to us that the record fairly establishes that Boyum had duly surrendered notes to the corporation in payment, as was held by the Referee. Boyum's offer to purchase was made by letter dated December 31, 1929. The offer was accepted at a meeting of the board of directors held on January 2, 1930. The District Court took the view that "the records of the bankrupt convincingly establish the fact that no notes were, on or about January 2nd, or within any reasonable time thereof, surrendered by Boyum to the corporation, nor were any such notes cancelled." 41 F. Supp. at page 361.

The bills payable register shows that on January 1, 1929, Boyum held notes of the corporation in the amount of $15,000. It further shows that during that year the corporation issued four additional notes to him in the face amounts of $10,000, $10,000, $5,000, and $9,900 respectively. The total bills payable liability for the year 1929, including trade acceptances, other outside note obligations, and Boyum's notes, aggregated $61,153.82. The total bills payable liability shown on the financial statement of January 1, 1930, amounted to $25,211.43. There had thus been discharged, during the year 1929, corporate bills payable amounting to $35,942.39. The cash disbursements made that year on account of bills payable, as shown on the financial statement of January 1, 1930, were $19,484.82, which left the amount of notes discharged, other than by cash disbursements, $16,457.57. This is substantially the figure of $16,503.93, at which the Leader Store was then being carried on the corporation's books.

Of the $19,484.82 disbursed in cash on bills payable, $4,484.82 appears to have been used in discharging trade acceptanc-

es, leaving $15,000 to be applied upon notes held by Boyum. A $5,000 and a $10,000 note are correspondingly shown paid. Another $5,000 note and the $9,-900 note are also shown as discharged, with a special notation, "See Journal entry, page 1064", and a credit of $1,557.57 is indicated upon a $10,000 note. The $5,-000 note, the $9,900 note, and the $1,557.-57 credit upon the $10,000 note total $16,-457.57, which is the amount of notes purporting to have been dischargd other than by cash disbursements. There appears to be no logical explanation for the discharge of these notes, other than the Leader Store transaction.

Unfortunately, the journal, which was in the hands of the Trustee, was not produced at the hearing, so that the notation reference to it in the bills payable register could have been checked. Boyum apparently had not anticipated that the hearing on the reconsideration of his claims would delve exhaustively into the question of possible set-offs. At any rate the whole matter was somewhat informally tried. On a motion for a new trial, Boyum filed an affidavit by a public accountant, who had made a subsequent examination of the records, that the journal, at the page referred to in the bills payable register, showed the following entry and notation:

"December 31st, 1929.

| Interest | $46.36 | |
| Bills payable (I. J. B.) | $16,457.57 | |
| Leader Store | | $16,503.93 |

"The Leader Store $15,344.03 and fixtures $1,136.35 transferred to I. J. Boyum at invoice figures and bills payable held by I. J. Boyum taken up and reduced in like amount. See Minutes of Board of Directors meeting. Unearned insurance premium $23.55 also included in the above figure."

This entry cannot, of course, be considered here, since it is not in the evidence upon which the Referee and the District Court acted. But, even without it, it seems to us that the facts that we have detailed above lend sufficient corroboration to Boyum's testimony that such notes were discharged by him at the time, that it would be a manifest injustice, in the absence of any contradictory evidence in the record, to hold that he still owed the corporation for the Leader Store purchase. Appellees argue that, if the facts in the bills payable register be accepted, then

Boyum had purported to discharge the notes before the purchase had been approved by the board of directors on January 2, 1930. In view of Boyum's relationship to the corporation, however, the approval of the board of directors was hardly more than a formality. Boyum apparently wished to have the reduction in the corporation's bills payable appear in its January 1, 1930, financial statement. With no other rational basis evident or suggested for the discharge of the $16,-457.57 note indebtedness, than the Leader Store transaction, this formal irregularity will not be allowed to cloud the otherwise clear conviction, which a careful analysis of the records in evidence, together with Boyum's direct testimony, believed by the Referee, has produced. The purchase price of the Leader Store was therefore not a proper set-off to Boyum's claims.

The other contentions raised do not require detailed discussion. The legality of the dividends paid in 1924 and 1925 is not a proper issue here. Whether the application for an extension of time, in which to petition for review, was seasonably made before the Referee, became moot when the District Court accepted the petition and made the review. The manner in which a review of a Referee's order may be obtained as a matter of right is prescribed by c. 575, § 1 of the Chandler Act of June 22, 1938, 52 Stat. 858, 11 U.S. C.A. § 67, sub. c, but this provision does not purport to impose any limitation upon the discretionary power of the District Court to assume jurisdiction to make a review. Biggs v. Mays, 8 Cir., 125 F.2d 693. With the question whether appellees had properly perfected their right to petition for review thus moot, it does not require further consideration here. As to the summary jurisdiction of the court to require the refunding of any excess dividend paid to a creditor, there can be no sound question under subdivision *l*, section 57 of the Chandler Act, 52 Stat. 866, 11 U.S.C.A. § 93, sub. *l*.

The portions of the District Court's order disallowing Boyum's claims upon the $2,500 and the $10,000 notes, fixing the amount of the corporation's indebtedness to him at $33,678.33, and allowing a set-off against this indebtedness in the sum of $3,652.95, for payments received by him upon the $10,000 note which was without consideration, and interest, will be affirmed. His claim upon the

promissory notes, in the amount of $32,040.42, for advances made to the corporation, will be directed to be subordinated to the claims of other general creditors, and the set-off of $3,652.95 allowed above, for payments received upon the $10,000 note which was without consideration, will be directed to be applied against this portion of his claim. If the other general creditors have not yet been paid in full, or if funds are not yet available from the liquidation of other assets for that purpose, he will be required to refund to the Trustee the dividend received by him upon the $2,500 and $10,000 notes here disallowed, and upon that portion of his claims which has been directed to be subordinated. If other general creditors have been or will be paid in full, he can not be required to account for the alleged preferences received by him, except of course to show that proper credit has been given therefor, since the stockholders would in such a situation be the only parties involved, and they as such could have no right to attack payments received by a creditor upon his legitimate indebtedness merely because they were made during insolvency and within four months prior to bankruptcy. The portions of the District Court's order requiring Boyum to set off the amount of the bonuses received by him and the purchase price of the Leader Store will be reversed.

One further question requires brief consideration. The Trustee, who had refused to participate in the proceedings for reconsideration of Boyum's claims before the Referee or to file a petition for review, has now filed a special appearance here and a request for dismissal of the appeal, on the ground that he was not made a formal party to the appeal proceedings. The filing made by him further recites: "In the event said motion under said special appearance is denied that then the said Trustee, subject to his exception to such ruling, if made, appears generally and submits to said Circuit Court of Appeals the brief prepared for such event on behalf of the appellees named and on his own behalf." The record shows that the Trustee was duly served with a copy of the notice of appeal. If he had then desired to be made a party, he could have asked that this be done. In view of his previous position, and the fact that the Referee and the District Court allowed appellees to proceed on behalf of the bankrupt estate without requiring that he be joined as a party, and that he did not see fit to have himself made a party when the notice of appeal was served upon him, we believe it will best serve the ends of justice to overrule his special appearance and to allow him simply to join as an appellee in this appeal.

Modified and affirmed in part; reversed in part.