## SCOTT v. HOAGE, Deputy Com'r, et al.
### No. 6157.

United States Court of Appeals for the District of Columbia.

Argued April 9, 1934.

Decided June 30, 1934.

Motion to Modify Decree Denied Oct. 12, 1934.

Charles V. Imlay, George G. McLeish, John H. Wilson, and J. Flipper Derricotte, all of Washington, D. C., for appellant.

Norman Fischer, Leroy S. Bendheim, Stanley Fischer, George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., Henry R. Gower, and Leslie C. Garnett, U. S. Atty., all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case arises under the Longshoremen's and Harbor Workers' Act of March 4, 1927, 44 Stat. 1424 (33 USCA § 901 et seq.), made applicable to the District of Columbia by Act of May 17, 1928, 45 Stat. 600 (D. C. Code 1929, T. 19, §§ 11, 12, 33 USCA § 901 note).

A claim for compensation under the act was filed by Julia B. Scott for herself and her two children because of the death of her husband, William McKinley Scott, which occurred in the District of Columbia on November 27, 1932.

The claim was heard by the Deputy Commissioner and was rejected. The appellant then brought suit in the Supreme Court of the District of Columbia to obtain a review of the Deputy Commissioner's decision. A motion to dismiss her bill was filed in that court by the defendants. The motion was sustained. Whereupon, the present appeal was taken.

The appellees herein include the Deputy Commissioner; B. Earlie Talbott, the employer of the deceased; and the Royal Indemnity Company, a corporation, the insurance carrier.

At the hearing before the Deputy Commissioner it was contended by the employer and the insurance company that the deceased's death did not arise out of and in the course of his employment; that his death was caused solely by intoxication; and that it may have been due to homicide or to some other condition or accidental injury. It was also claimed that the policy of insurance issued to the employer by the insurance company had been canceled prior to the time of the accident which resulted in the death of the deceased.

The record discloses that the deceased was employed as resident janitor at the Alzarado apartment house in the District of Columbia on duty twenty-four hours a day, and by his contract of employment was required to live in quarters furnished by his employer which were on the basement floor of the building, being on the same floor with the heating furnace of the building; that on the night in question the deceased had been drinking, but the testimony is conflicting as to whether he was intoxicated; that at about 3 o'clock in the morning the deceased left the companions with whom he had been drinking saying that he was going to attend to the fires at his place of employment; that nothing more is reported about his movements until about 4 o'clock in the morning when his wife who had been asleep heard the springs of her bed squeak as if deceased was getting out of bed, and then heard deceased say, "Oh! Whee!"; that she turned in bed and saw a fire which threw light into the room; that deceased then went out of the door through the fire; that she and her two children then made their escape through a window. The basement of the building was greatly damaged by the fire, and the body of deceased was not found until about two days later when it was discovered slumped in the bottom of a dumb-waiter shaft, and covered with débris. He had died in the basement from universal burns of the body and there were no marks of violence on his person. The origin of the fire is unknown.

It appears that the appellee corporation had issued a policy of insurance under the Compensation Act to the employer Talbott to be in force from July 1, 1932, to June 30, 1933; that this policy bore the number C-598146 and was so carried on the Commissioner's records; that a letter of the company, dated July 22, 1932, was received at the Commissioner's office on July 23, 1932, purporting to notify the Commissioner that a policy on Benjamin E. Talbott, No. C-569146, was canceled. It appears that the number of the policy thus given by the notice was incorrect; that the policy in fact bore the number C-598146. It was claimed by the appellee corporation that this difference in numbers was the result of a clerical

error only, and that the notice nevertheless was effective to cancel the policy prior to the time of the accident. It is conceded that the appellee B. Earlie Talbott, and Benjamin E. Talbott, the insured named in the policy, are one and the same person, and that the attempted cancellation related to the policy involved in this case.

After hearing the testimony the Deputy Commissioner reported his findings of fact, which were in part as follows: That on November 27, 1932, the deceased was in the employ of the appellee Talbott, and the employer was subject to the provisions of the Compensation Act; that on that day a fire occurred in the apartment where the employee was living and in which he was employed as resident janitor; that early in the morning of that day the apartment house was found to be on fire and the employee was missing; that after a search for two or three days his body was found at the bottom of a dumb-waiter shaft; that his body was charred and it was found that he had been burned to death. The Deputy Commissioner found that the testimony failed to establish that the death of deceased was caused solely by intoxication, but he found that the injury which caused the death did not arise out of or occur in the course of his employment as janitor and that there was no evidence of any causal connection between the employment and the cause of death; that the death may have been the result of homicide or other causes not connected with the employment. The Deputy Commissioner also found that the insurance company was not liable for compensation under the act for the reason that the policy issued by it had been canceled prior to the date of the injury and death of the deceased. Upon these findings the Deputy Commissioner rejected appellant's claim for compensation.

■■ We are of the opinion that the conclusion reached by the Deputy Commissioner upon the facts found by him was contrary to law, and that the claim of appellant should have been sustained.

It may be said in brief that the charge that the death of the deceased was due solely to his intoxication is overcome by the finding of the Deputy Commissioner that the employer had failed to establish that his death was caused solely by intoxication. Moreover, it is provided by section 20 of the act (33 USCA § 920) that: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—* * * (c) That the injury was

not occasioned solely by the intoxication of the injured employee."

The statement of the Deputy Commissioner that the death of the deceased may have been the result of homicide or other causes not connected with his employment is conjectural only, and is wholly unsustained by any evidence. The deceased was burned to death by the fire in his living quarters and his body bore no marks of violence such as would tend to prove that death had resulted from homicide. The statement of the Deputy Commissioner that death may have been the result of other causes not connected with the employment also is purely conjectural and is without any support in the record.

We think that the evidence plainly shows that the accident arose out of and occurred in the course of the employment of deceased. He was employed as janitor for twenty-four hours' service daily with his duties relating in part to the heating furnace of the apartment house. He and his family occupied an apartment in the basement of the building in which the furnace was located. The fire which caused his death was accidental so far as the testimony discloses. The action of the deceased when he was confronted by the fire cannot now be explained. Instead of seeking safety by getting out of the window as his wife and children did, he apparently rushed through the fire and later his body was found in the dumb-waiter. The question of compensation, however, does not depend upon the discretion exercised by deceased for his personal safety under these circumstances. Contributory negligence is not a defense to a claim for compensation. 28 R. C. L. 831. This case is very similar to that of In the Matter of Giliotti v. Hoffman Catering Co., Inc., 246 N. Y. 279, 158 N. E. 621, 56 A. L. R. 500. We copy the syllabus of the opinion in that case as a clear exposition of the law upon the subject: "An award under the Workmen's Compensation Law is properly made for the death of a chef employed for a definite term at a weekly wage together with room and board, who, at the end of the day's work, had retired to his room in a section of the hotel provided for the help and, while there, was suffocated to death by a fire which occurred in the hotel. The relation of employer and employee did not cease because the employee was off duty. There was a continuity of employment. Sleeping on the premises in a room provided by the employer in the servants' quarters was an incident of the employment, mutually beneficial to employer and employee, not a temporary suspension of it. And death arose out of the

employment. The danger from fire to which the employee was exposed attached specially to the premises where he was employed; it was peculiar to the situation and a risk to which his employment exposed him."

See Holt Lumber Co. v. Ind. Co., 168 Wis. 381, 170 N. W. 366.

The instant case is much stronger than those just cited inasmuch as the employee at the time of the accident was actually at his place of duty and was engaged in his employment.

█ We are of the opinion also that the Deputy Commissioner erred as a matter of law in sustaining the motion of the insurance company to be dismissed from the case. It is conceded that the company had issued a policy covering the employer and the deceased as employee from July 1, 1932, to June 30, 1933, and that the correct number of the policy was C-598146. The company, it appears, undertook to cancel the policy by notice of July 22, 1932. In order to accomplish this purpose it was necessary for the company to comply with the provisions of section 36 (b) of the act (44 Stat. 1424, 1441, 33 USCA. § 936 (b), reading in part as follows: "(b) No contract or policy of insurance issued by a carrier under this chapter shall be canceled prior to the date specified in such contract or policy for its expiration until at least thirty days have elapsed after a notice of cancellation has been sent to the deputy commissioner and to the employer in accordance with the provisions of subdivision (c) of section 12 [section 912 of this chapter]." Section 12, subd. (c) of the act, 33 USCA § 912 (c), reads in part as follows: "Notice shall be given to the deputy commissioner by delivering it to him or sending it by mail addressed to his office, and to the employer by delivering it to him or by sending it by mail addressed to him at his last known place of business. * * *" It appears that a notice of cancellation was sent to the Deputy Commissioner by mail but that it described the policy by a wrong number, giving the number of C-569146, whereas the correct number was C-598146. When the notice was received a clerk, finding no such number as C-569146, marked in pencil on the record "no card," so that in case card No. C-569146 should come in, it would be considered in connection with policy No. C-598146. Apparently no such card as C-569146 came in. It is probable that the mistake in numbers was the result of clerical error only. Nevertheless we think that misdescription of the policy number in the notice vitiates it. The duty rests upon the company to send a correct notice, and inasmuch as it failed to do so in this case, it did not accomplish the purpose for which it was sent. It is the intention of the Compensation Act that its provisions shall be liberally construed in favor of the employee.

█ Furthermore, there is no lawful proof in the record tending to show that the required notice was sent by the company to the employer. It was said by the company's counsel at the hearing that a notice had been sent to the employer to the effect that the policy would be canceled unless the premium was paid by January 22, and that subsequently a notice was sent to him that the policy had been canceled. The counsel stated that they would procure a deposition from a witness in New York City to this effect, and leave was given them to do so. But thereafter, no such deposition having been filed, the Deputy Commissioner announced that if the employer would admit that there was no coverage in November he would excuse the company from further attendance. Thereupon, the employer's counsel said: "We will make that admission." The Deputy Commissioner answered: "You may be excused from the case, Mr. Fischer." Mr. Fischer, attorney for the company, then said: "In other words, the Royal Indemnity Company is out of the case." The Deputy Commissioner answered, "Yes," to which counsel for the appellant noted an exception. We think that this was not legal evidence of notice. The employer may have been willing to waive the provisions of the statute regarding notice, but he was not entitled to do so to the prejudice of the employee. Accordingly, we think there is no lawful evidence in the record that the policy was canceled as required by the terms of the statute, and that the company was liable upon the policy at the time of the accident.

Therefore, we hold that appellant's claim is compensable according to the facts lawfully established in the record.

Therefore the decree of the lower court is reversed, and the case is remanded to the lower court, with directions to issue a decree directing the Deputy Commissioner to determine the amount of the award in accordance with law.