## In re FERGUS FALLS WOOLEN MILLS CO.

### No. 53161.

District Court, D. Minnesota,
Sixth Division.

March 29, 1941.

Supplemental Opinion April 26, 1941.

Eriksson & Eriksson, of Fergus Falls, Minn., for petitioners Samuel E. Johnson and Louisville Textiles, Inc.

Wallace Sieh, of Osakis, Minn., for Frank C. Barnes, the Trustee.

Henry Nycklemoe, of Fergus Falls, Minn., for claimant Iver J. Boyum.

SULLIVAN, District Judge.

Samuel E. Johnson and Louisville Textiles, Inc. (hereinafter referred to as petitioners), have petitioned this Court for a review of the referee's order of June 4, 1940, allowing the claims of Iver J. Boyum (hereinafter referred to as claimant). The respective petitions for review present the same identical question: Did the referee err in allowing the claims of Iver J. Boyum?

The Fergus Falls Woolen Mills Company was adjudicated a bankrupt on March 21, 1938, upon its voluntary petition. This followed the lodging of a suit against Iver J. Boyum on March 10, 1938, in the District Court of Ottertail County, Minnesota, by certain stockholders of said bankrupt, in which suit certain acts of malfeasance were charged to said Boyum and an accounting was asked. On April 6, 1938, Boyum filed in this bankruptcy proceeding the claims with which we are now concerned. On August 1, 1938, objections to the Boyum claims were interposed by the Nelson-Orne Company and the First National Bank of Fergus Falls, Minnesota. These objections, however, were withdrawn in consideration of Boyum's promise to pay said two claims out of the first dividends received by him on his claims against the bankrupt. Upon the withdrawal of said

claims the Boyum claims were allowed as follows:

Preferred claim for services in
the sum of .................. $   424.11
General Claim for Salary as
Manager ................... 2,482.56
Principal and Interest on Notes 47,572.34

Claims of other creditors, except for taxes, were allowed in the sum of $1,759.70.

On October 4, 1939, the petitioners herein filed a petition for a reconsideration and disallowance of the Boyum claims. A reconsideration and hearing of said claims was had, with the result that on June 4, 1940, the referee made and filed an amended order allowing Boyum's claims as follows:

General claim for secretarial
services in sum of........... $   424.11
Salary claim in the sum of..... 1,213.80
Claims on notes in the sum of.. 47,572.67
                                ─────────
Making a total of............. $49,210.58

found to be due and owing Boyum from the bankrupt.

On June 19, 1940, more than ten days after the filing of the order above referred to, a petition was filed by Johnson for an extension of time within which to file a petition for review. The referee extended the time for such purpose up and to July 5, 1940. Johnson filed his petition for review on June 29, 1940, within said extended period.

On October 16, 1940, the Louisville Textiles, Inc., a general creditor whose claim had been allowed, applied to the referee for extension of time within which to file its petition for review of said order of June 4, 1940. The referee granted this application and within the time as extended the Louisville Textiles, Inc., filed its petition for review. Johnson, one of the petitioners, who was and is a stockholder in said bankrupt, and Louisville Textiles, Inc., a general creditor of said bankrupt, have brought this matter on for review.

The trustee of the bankrupt estate and the claimant Boyum object to this Court proceeding to review the order of the referee on the grounds that the time within which a petition might be filed for review of said order expired before such petition was made to the referee.

It is well to observe that the trustee at no time interposed any objections to the claims of Boyum, not even to the extent of requiring Boyum to make formal proof of his claims before the referee, and further, it appears that one of the firm of attorneys who represented Boyum in the State court proceeding is one of the attorneys for the trustee. The trustee urges here that the petitioners are usurping the powers, duties and functions of the trustee. The trustee's position, in light of all the circumstances, is untenable. A trustee should be the representative of all persons interested in the trust. It is his duty to protect the estate from fraudulent and unjust claims. Where the trustee fails to contest doubtful claims, or apparently invalid claims, the creditors are not compelled to sit idly by and do nothing about it. It is the privilege and right of creditors who have filed claims in the proceeding to petition the Court for a review of a referee's order, where it is apparent that there is grave question as to the validity of such order, and the creditors may do this, even though no request has been made upon the trustee to do so. See: In re Flanders Company, 6 Cir., 32 F.2d 654; Chandler Act, Section 2, sub. a(10), 11 U.S.C.A., 11, sub. a(10), Section 39, subs. b and c, 11 U.S.C.A. 67, subs. b and c. The petitioners appeared in the proceeding before the referee and are clearly persons entitled to petition for review. See In re Peppers Fruit Company, D.C., S.D.Cal., 24 F.Supp. 119. Boyum and the trustee urge that the petition for review was not filed in proper time, and that the referee had no authority or power in the law to grant an extension of time within which such a petition might be filed. The Bankruptcy Act expressly declares that "Court" shall mean the judge or the referee, and invests the referee with jurisdiction to "perform such * * * duties as are * * * conferred on courts of bankruptcy, * * * except as herein otherwise provided." 11 U.S.C.A., §§ 1(9), 66(6).

The jurisdiction of the bankruptcy court attaches upon the filing of a petition, and continues until the closing of the estate. The Chandler Act, Section 2, sub. a, Clause (10), 11 U.S.C.A., 11, sub. a(10), confers the right to review. Section 39, sub. c, 11 U.S.C.A., 67, sub. c, prescribes the procedure and permits the filing of a petition for review after the lapse of more than ten days from the date of filing the order of which a review is undertaken. The referee had the authority to extend the

360

time within which a petition for review might be filed. See Thummess v. Von Hoffman, 3 Cir., 109 F.2d 291.

■■■ In considering Boyum's claims on the merits we must do so with the rule in mind that a referee's findings are accompanied by a certain presumption of correctness, and will not be disturbed in the absence of manifest error, and unless it clearly appears that the finding is unsupported by evidence or resulted from a mistaken view of the law, or there is error which would result in a miscarriage of justice. Maners v. Ahlfeldt et al., 8 Cir., 59 F.2d 938; Rasmussen v. Gresly, 8 Cir., 77 F.2d 252. This Court appreciates and recognizes the experience and learning of the referee and his opportunity to observe the witnesses who have testified at the hearing, but I am constrained to disagree with him in his findings. Much of the substantial evidence is a matter of record contained in the books of the bankrupt. These books were kept under the direction of Boyum. There appears to be little or no conflicting evidence of any probative value with the entries in the books and records of the corporation, received in evidence at the hearing, so the question of the validity of the Boyum claims is resolved into one of what deductions should be drawn from the recorded facts, in other words,— from the records of the bankrupt. See In re Solof et al., 9 Cir., 2 F.2d 130; Grossberger v. B. F. Goodrich Rubber Co., 6 Cir., 8 F.2d 964;. In re Duvall, 7 Cir., 103 F.2d 653.

The bankrupt was a "one-man corporation". Of the 492 outstanding and issued shares of common stock, 312 were held by Boyum. 89 more shares were held by Boyum's wife and members of his family. Boyum controlled the election of the members to the board of directors. The board at all times has been controlled and directed in its actions by Boyum, who ran the corporation to suit his own wishes, apparently, in entire disregard of the wishes of the minority stockholders. It may be said that the corporation was his instrumentality in carrying on the business in which the bankrupt was engaged.

### Preference.

The first contention made by the petitioners is that Boyum received a preference in payment on his note claims, in violation of Sections 57, sub. g, 60, sub. a, 11 U.S.C.A. §§ 93, sub. g, 96, sub. a, and Section 1(30) of the Chandler Act, 11 U.S.C.A. § 1(30).

The notes which are the basis of Boyum's claims (other than salary) show endorsements evidencing interest payments thereon under date of December 31, 1937, less than four months prior to the filing of the petition in bankruptcy. The total amount of endorsements made on that date on the notes is the sum of $2,583.70. There appear on the note endorsements without date, and the amount of such endorsements is $729, making an aggregate of $3,312.70 paid on the notes as interest on or about December 31, 1937.

■■■ It is Boyum's contention that while endorsements appear under date of December 31, 1937, as a matter of fact he received merchandise from the bankrupt during the year 1937, prior to the four months next preceding the filing of the petition in bankruptcy, and that interest payments as a matter of fact were made by credits for this merchandise prior to the actual date appearing as the date of endorsement on the note. The journal of the bankrupt, on pages 1610, 1611 and 1612, shows that on December 31, 1937, seven carloads of apples were charged to Boyum. This item appears on said record as a credit to interest on the Boyum notes. The records of the bankrupt as to the date of the endorsement on the notes are convincing. The testimony of Boyum in respect to credits is unpersuasive. He was the manager and director of the bankrupt, and the books of the corporation were kept under his direction. Boyum was also one of the directors who voted for the adoption of the regulation authorizing the filing of the petition in bankruptcy. He signed and verified the petition and schedules, and, of course, had full knowledge of the contents thereof, and if the bankrupt was insolvent at the date of the filing of the petition, it follows that Boyum knew that fact, and there is no question that a preference was extended to Boyum in the payment of interest to him on December 31, 1937. There is, however, uncertainty as to the time of the payment of the $729. One claiming that a preference was extended has the burden of proving that fact. It has not been established to the satisfaction of the Court that the $729 was paid within four months of the filing of the petition in bankruptcy, so as to that item the claim of preference made by petitioners is disallowed, but their claim

of a preference in the payment of $2,583.-70 is allowed, and said amount should be set off against any valid claim which Boyum may have against the bankrupt.

More serious objections than that of preference are made to the claims of Boyum. The petitioners contend (1) that illegal dividends were paid, (2) that illegal bonuses were paid, (3) that the bankrupt was not credited on its notes to Boyum for the appraised value of the Leader Store, (4) that the statute of limitations has run as against the $2,500 note, and (5) damages arising from careless and negligent management of the business by Boyum. Setoffs, based upon the foregoing items, have been interposed to the claims of Boyum.

■ As to damage resulting from the negligent operation of the business by Boyum, if any, the Court does not consider, since the respective contentions of the parties thereto were not fully litigated, and there is insufficient evidence to base any finding thereon.

### Leader Store Transaction.

On December 31, 1929, Boyum offered to buy the Leader Store, a store owned and conducted by the bankrupt at Fergus Falls, Minnesota, at the price at which bankrupt was then carrying said store on its inventory, being the sum of $16,480.38. Boyum, by his offer to purchase said store, agreed to surrender notes to that amount made by the bankrupt to him. On January 2, 1930, the bankrupt accepted said offer and from said date on the Leader Store was owned, managed and operated by members of Boyum's family.

It is the petitioners' contention that notes aggregating the amount of the purchase price were never delivered over to the bankrupt or cancelled.

■ In the financial statement of January 1, 1930, bills payable are listed and aggregate $25,211.43. The only notes shown in said record to be held by Boyum are one for $10,000, dated January 14, 1928, and another for $8,442.43, dated January 21, 1929. These two notes now constitute a part of Boyum's claims made on notes. The bankrupt's income tax report for the year 1929, verified by Boyum as president of the company, shows that the total of the bills payable of the year 1929 was $25,211.43. The financial statement of January 1, 1927, does not disclose any indebtedness by the bankrupt to Boyum. The financial statement of January 1, 1928, shows bills payable

totaling $15,000. The bills payable register shows that two notes (made in 1927) totaling $15,000 were paid to Boyum during 1928. The financial statement of January 1, 1929, shows bills payable totaling $15,000. The bills payable register shows the payment of a $5,000 note (made in 1928) to Boyum during the year 1929. The other $10,000 note is the one being questioned in this proceeding. The bills payable register shows that the first note issued to Boyum by the company in 1930 was dated March 15, 1930. No cash was paid by Boyum for the Leader Store. Boyum has testified in a very indefinite manner concerning the transaction, the total sum and substance of his testimony being that he surrendered notes sufficient to cover the purchase price of the Leader Store. The burden of proof was on Boyum to sustain his contention. He has failed to do so. On the other hand, the records of the bankrupt convincingly establish the fact that no notes were, on or about January 2nd, or within any reasonable time thereof, surrendered by Boyum to the corporation, nor were any such notes cancelled. The bankrupt's indebtedness to Boyum on January 2, 1930, was $18,442.43, and no credits were, within any reasonable time from and after said date, given to the bankrupt by reason of the purchase price of the Leader Store. The bankrupt is entitled to a setoff in the sum of $16,480.38, with interest thereon at the rate of six per cent. per annum from January 2, 1930, up to the date of bankruptcy, amounting in the aggregate to the sum of $24,602.27, against any valid claim in favor of Boyum against the bankrupt.

### Illegal Dividends.

■ There appears to be no question but what illegal dividends were declared by the board of directors of the bankrupt for the years 1924 and 1925. At the time of the declaration of said dividends, the company had no reserve for the payment thereof and it became necessary for the company to borrow money to enable it to pay such dividends. It appears that Johnson and all other stockholders acquiesced and approved of such dividend payments. They cannot now be heard to object thereto. See Volume 3, Section 7492-22, Mason's Minnesota Statutes, 1927. Louisville Textiles, Inc., did not become a creditor of the corporation until the year 1937, so under all of the circumstances, the petitioners should not be permitted to assert the illegality of said dividend payments. There is, however, authority to the effect that where dividends are

paid to stockholders out of the capital of the corporation at a time when it had no profits, owed debts and was then insolvent, they may, the corporation thereafter becoming a bankrupt, be recovered back by the trustee in bankruptcy for the benefit of the creditors who became such after the payment of such dividends, it not appearing that such creditors did not deal with the corporation in reliance on its capital being unimpaired as represented. See Mackall v. Pocock, 136 Minn. 8, 161 N.W. 228, L.R.A.1917C, 390. However, the facts in this case do not bring the right of setoff based on payment of illegal dividends within the rule of the Pocock case.

### Bonus Payments.

We come now to the question as to whether the amounts paid out in bonuses to Boyum should be allowed as a setoff against his claims.

The bonuses in each of the years commencing with the year 1919 and continuing to and including the year 1925 were voted at the end of each of the seven years, the aggregate amount thereof being $21,000 all of which was paid to and received by Boyum out of the assets of the bankrupt. There is no evidence as to any advance agreement with reference to bonuses. On the contrary, the records disclose and the testimony in the case is that the salary of Boyum was fixed at the beginning of each year. Nothing was said as to any bonus. Generally, the authorities hold that bonuses cannot be granted to officers of a corporation by way of additional compensation for services which had theretofore been rendered, and especially against the protest of any stockholders (see Annotation in 40 A.L.R., page 1432; Annotation in 88 A.L.R., page 754; Jones v. Morrison et al., 31 Minn. 140, 16 N.W. 854), and that such bonuses may be recovered by the corporation at the suit of any stockholder. Thauer v. Gaebler et al., 202 Wis. 296, 232 N.W. 561.

We are not here dealing with a contract made by a director with a corporation for his services. There was no agreement as to bonuses. The payment of such bonuses constituted gratuities, and, of course, we cannot overlook the fact that Boyum dominated the company and was one of the board of directors. At four of the directors' meetings voting bonuses, only four of the directors, including Boyum, were present. Boyum was disqualified to vote on any contract or matter in which he was interested. Boyum could not be count-ed in determining a quorum. The by-laws of the corporation required that four directors be present for a quorum. It follows that at the four meetings where bonuses were voted there was no quorum, and the meetings were illegal. Further, it does not appear that any notice was ever given of these meetings of the board. The voting and granting of the bonuses was at no time disclosed to the stockholders. Sam Johnson and all the other stockholders, except the members of the board of directors, had no knowledge or information of the payment or granting of said bonuses.

It is argued by Boyum that the statute of limitations has run as to any action which might be brought to recover the amounts paid as bonuses. The petitioners are not here seeking to recover the amounts so paid as bonuses, but are contending for a setoff in the amount of said bonuses against the claims of Boyum. Fraud on the part of Boyum is the basis of the petitioners' claim for setoff. The applicable statute of limitations as to actions based on fraud is Section 9191(6), Mason's Minnesota Statutes, 1927, Volume 2, which provides that the cause of action is not deemed to have accrued until the discovery of facts constituting fraud, and that action may be brought within six years thereafter. The evidence is conclusive that neither of the petitioners, nor any of the other creditors or stockholders, knew of any facts tending to indicate fraud prior to the examination of the bankrupt in this proceeding. I am satisfied that their failure to discover these facts indicating fraud on the part of Boyum at an earlier date is based upon reasonable grounds. See Keough v. St. Paul Milk Company, 205 Minn. 96, 285 N.W. 809.

After the payment of the bonus to Boyum in the year 1925, in which year there was also declared a dividend of 22% on the common stock, the records of the bankrupt reveal that it had cash on hand in the amount of $225.97, that before payment of the dividend there was an overdraft of $1,629.04 in the Fergus Falls National Bank. It was necessary, in order to pay the dividend, to borrow the sum of $11,000 from Boyum. During the year the company issued its note for loans of over $63,000. This gives us a picture of just what was done in the preceding years. The company was in debt without cash reserve, but nevertheless, bonuses were voted and dividends paid. Under such circumstances, for a court to permit Boyum to escape the

consequences of the plainly illegal acts would be a violation of the principles of equity. The creditors are wholly without blame. It is the province of a court of equity to protect the innocent from the infliction of a wrong. See Burnes National Bank v. Mueller-Keller Candy Company et al., 8 Cir., 86 F.2d 252.

An offset in the sum of $21,000 the aggregate of the bonus payments with interest thereon figured at six per cent., amounting to $19,635, making a total of $40,635, should be allowed against the claim of Boyum.

### Claim Based on $2,500 Note.

One of the claims filed by Boyum is based on a demand note for $2,500. This note bears date March 15, 1930. The note bears six endorsements with interest, the first of which is undated, but is apparently for interest to December 31, 1930. The second endorsement is dated January 4, 1931. Then follow two undated endorsements of $175 each to cover interest to December 31st, in 1932 and 1933. The two following endorsements are dated December 31, 1937, one for $175, and one for $14. It is conceded by the petitioners that the statute of limitations did not commence to run until January 4, 1931, but it is their contention that the notes were outlawed at the time of the commencement of this bankruptcy proceeding in March, 1938. Unless there was some intermediate payment between January 4, 1931, and March, 1938, the statute of limitations had run as against said note at the time of the filing of the petition in bankruptcy.

The claimant has offered no proof as to when the two undated endorsements were made. The "pivotal" question is: When were said endorsements made? The burden is on Boyum to establish "dehors the endorsement" the fact that the endorsement was made at a time when it was against the interest of the holder to make it. Riley v. Mankato Loan & Trust Company, 133 Minn. 289, 158 N.W. 391. See, also, Young v. Perkins, 29 Minn. 173, 12 N.W. 515. The payment made in 1937 as interest on the note constituted a voidable preference. A voidable preference cannot revive an outlawed note or toll the statute of limitations. Taylor v. Mitchell et al., 80 Minn. 492, 83 N.W. 418. If payment of interest was credited on the notes subsequent to the running of the statute of limitations, the application thereof was made by Boyum, the creditor, and this would not revive and extend the statute of limitations. Anderson v. Nystrom et al., 103 Minn. 168, 114 N.W. 742, 13 L.R.A.,N.S., 1141, 123 Am.St.Rep. 320, 14 Ann.Cas. 54.

There was no voluntary application of any payment to this debt by the bankrupt. The bookkeeper of the bankrupt testified that when any endorsements were made on notes owing to Boyum, Boyum, the creditor, directed the manner in which the various endorsements should be made. The question of borrowing money, renewing notes or payments on notes of interest was never discussed or taken up with the board of directors. Boyum, the creditor, directed the bookkeeper in that respect. The claimant has failed to establish the dates of these undated payments of interest. The burden was on him to do so. It must be concluded that the statute of limitations has run as to said note, and that the same does not constitute the basis for a valid claim in this proceeding.

### Note of $10,000, Bearing Date January 14, 1928.

Objection is made to the claim of Boyum based on the $10,000 note dated January 14, 1928, on the ground of want of consideration. There are no cancelled checks or bank records evidencing the transaction. The testimony of Boyum is of no aid in determining whether or not there was consideration for this note, so we are required to look to the financial statements and the bills payable register in our efforts to ascertain what the facts might be.

The financial statement of January 1, 1928, shows receipts on account of bills payable in the sum of $63,234. A breakdown of this item from the register of bills payable shows notes to Boyum in the total amount of $54,000, a note to the First State Bank of $4,000, and loans on insurance in the total amount of $5,234, the total of the foregoing three items being $63,234. In addition there is shown a bill payable of $397.06 to the Louisville Cotton Mills.

The same financial statement shows disbursements on account of bills payable, $48,631.06. Breaking this down from the bills payable register we find $39,000 paid Boyum, and $4,000 paid the First State Bank, leaving $5,631.06. The insurance loans in the total amount of $5,234 are shown as paid, but no dates of payment appear. The $397.06 item (Louisville Cotton Mills) is marked paid, but no date of payment is shown. However, these two last items appear to have been paid during the year 1927.

Then, coming to the financial statement of January 1, 1929, there appear to be receipts during 1928 on account of bills payable (notes payable) of $29,051.75. However, the bills payable register shows notes issued to I. J. Boyum during 1928 in the total amount of $33,000 and loans on life insurance policies on the life of said Boyum in the total amount of $6,043, making a total amount of loans and notes of $39,043. Deducting the sum received from insurance loans, $6,043, from the money received on account of bills payable, $29,051.75, as set out in the financial statement of January 1, 1929, we have a balance of $23,008.75 as the total amount of money which Boyum furnished the bankrupt corporation during the year 1928. Then, subtracting the above balance, $23,008.75, from the total amount of notes issued to the claimant, as it appears from the bills payable register, there is revealed a discrepancy of $9,991.25 in money received.

Claimant makes no explanation of this glaring discrepancy, beyond the statement that he did not have all his checks, and that on one occasion no check was written, but merely a debit entry made in his passbook at the bank and credit given to the bankrupt. In other words, we find the bills payable item in the financial statement of January 1, 1929, disclosing the item, $29,051.75. Of that amount, it appears from other evidence that $6,043 was derived from a loan made on insurance, while in the bills payable register we find notes made by the bankrupt to Boyum in the aggregate amount of $33,000. Boyum has failed to establish the validity of the claim based on this note against the bankrupt. I am unable to reach a conclusion other than that this note was given without consideration and claimant has failed in his proof to show that he furnished any consideration therefor.

### Conclusion.

The burden of proof, as before stated, is on Boyum to establish the amount, validity and status of his claims. The claims, being founded upon transactions between Boyum and the bankrupt, must necessarily be subjected to the closest scrutiny. Western Distributing Company v. Public Service Commission, 285 U.S. 119, 52 S.Ct. 283, 76 L.Ed. 655. In passing on such claims, the uncontradicted evidence, if discredited by other testimony, or if of an improbable character, need not be accepted by the court as true. Reiss v. Reardon, 8 Cir., 18 F.2d 200; Rasmussen v. Gresly, supra.

The general ledger and other records which might disclose the receipts and disbursements of the bankrupt were not offered in evidence. Whether the same are available I do not know. The bookkeeper for the bankrupt corporation said that she made some effort to find such records but was unable to find the same. If such books were available and were properly kept, the same would, no doubt, throw further light on the claims of Boyum.

Being a "one-man corporation", it was wholly dominated by Boyum without consideration of, or direction from, the board of directors. In all transactions between the bankrupt and Boyum the latter represented both of the parties. The directors and stockholders, from the disclosures in evidence, had no knowledge of the times, dates and amounts of notes made by the bankrupt to Boyum, nor did it have any knowledge of the existence of said notes until the same were disclosed in the financial statement. There could be no approval of fraudulent acts by the stockholders. They were in the dark as to the fraud and did not discover any unfair dealings between Boyum and the corporation until after the bankruptcy proceeding was initiated. It may well be said that the bankruptcy proceeding was inspired by the State court suit seeking an accounting.

A director occupies a fiduciary position with the corporation. Twin-Lick Oil Company v. Marbury, 91 U.S. 587, 588, 23 L.Ed. 328. This is likewise true of a dominating or controlling stockholder or group of stockholders. Southern Pacific Company v. Bogert et al., 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099.

"Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. * * * The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." Pepper v. Litton, 308 U. S. 295, 306, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281. See, also, Geddes et al., v. Anaconda

Copper Mining Company et al., 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425.

In the case of Twin-Lick Oil Company v. Marbury, supra, 91 U.S. on page 590, 23 L.Ed. 328, it is stated: "If he should be a sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger, and his acts subject to more severe scrutiny, and their validity determined by more rigid principles of morality, and freedom from motives of selfishness."

Courts of bankruptcy are constituted by Sections 1 and 11, 11 U.S.C.A., and are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in [bankruptcy] proceedings". See Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; In re Lilyknit Silk Underwear Company, Inc., 2 Cir., 73 F.2d 52.

It was the duty of Boyum to prove facts necessary to sustain the claims which he asserts against the bankrupt estate. He was required not only to do that, but he was required to prove the good faith of his transaction. He has failed in his proof in the respects called attention to hereinbefore, while the petitioners have established the offsets in the amounts and figures hereinbefore set out.

The notes of Iver J. Boyum filed as claims in this proceeding, save and except the $10,000 note and the $2,500 note, are allowed in the amounts found by the referee.

The claims for secretarial services and for salary are allowed, respectively, in the amounts of $424.11 and $1,213.80, as found by the referee. However, offsets to said claims are allowed in the amounts hereinbefore set out.

Whereas there has been a preference in the payment of the sum of $2,583.70 to said Boyum and the offsets to his claims exceed the amount thereof, Boyum is directed to return to the trustee in bankruptcy the sum of $2,583.70.

Findings of fact, conclusions of law and order for judgment in accordance with this Memorandum may be submitted upon five days' notice.

### Supplemental Opinion.

Proposed findings of fact, conclusions of law and order for judgment in re claims of Iver J. Boyum were submitted to the Court on the 12th day of April, 1941.

The undersigned deems it advisable to state his reasons for the adoption and rejection of some of the proposed conclusions of law.

1. This Court is without power or authority to render an affirmative judgment in this proceeding against the claimant, Mr. Boyum. The matter came before the Court on a hearing of the claims of the claimant. That was the sole matter under consideration, although it was proper at said hearing to consider all defenses and offsets to said claims in favor of the debtor and against the claimant, to the end that Mr. Boyum's claims, if any, might be adjusted and allowed or disallowed, as the case might be. The Court, however, in adjusting the claim of a creditor, has no power to grant an affirmative judgment in favor of the bankrupt if the offsets exceed the amount of the claims of a creditor. Fitch v. Richardson, 1 Cir., 147 F. 197; In re Peacock, C.C.E.D.N.C., 178 F. 851, at page 857; In re Patterson-MacDonald Shipbuilding Co., D.C., 284 F. 281, affirmed, 9 Cir., 293 F. 192, certiorari denied 264 U.S. 582, 44 S.Ct. 331, 68 L.Ed. 860.

2. While the Court has authority to order the return and repayment of an unlawful preference received by a third person, it has no power to direct the entry of an affirmative judgment against that person. A plenary suit must be instituted to recover a preference payment. MacDonald, Trustee, v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093.

3. The bankruptcy court has summary jurisdiction in proceedings seeking to recover for the bankrupt a dividend paid upon a claim which has been reconsidered and rejected in whole or in part. Subdivision l, Section 57, Chandler Act, Section 93, sub. l, 11 U.S.C.A.

4. The Court does not determine the question as to whether or not the attorneys for the petitioners herein are entitled to fees payable out of the trust for services rendered in this proceeding. That question may be brought on before the referee for hearing on proper petition.