251 P.2d 266

**STATE ex rel. HADDOCK ENGINEERS, Limited, et al. v. SWOPE.**

No. 5567.

Supreme Court of New Mexico.

Dec. 16, 1952.

Simms, Modrall, Seymour & Simms and Joseph E. Roehl, Albuquerque, Gilbert, White & Gilbert, Santa Fe, for petitioner.

Joseph L. Smith, Lorenzo A. Chavez and Dale B. Walker, Albuquerque, for respondent.

SADLER, Justice.

The relator seeks by prohibition to restrain Edwin L. Swope as a Judge of the 2nd Judicial District from proceeding further in a common-law action for negligence pending before him wherein one Cecil Shelton is plaintiff and relator is defendant in which the former seeks to recover damages from defendant by reason of injuries said to have been suffered by him while employed by the latter as a carpenter upon a classified government public work in the Territory of Alaska known as the Takotna Project. Upon the filing and reading of relator's petition herein we authorized the issuance of an alternative writ and the matter is now before us for final hearing. The material facts will next be stated.

On or about September 21, 1951, the plaintiff (meaning always the plaintiff below), a carpenter by trade, and a resident of Albuquerque, New Mexico, left that city for employment in Alaska. Shortly after arrival in Seattle, Washington, and on September 25, 1951, he entered into an employment contract with the petitioner for work in Alaska and was placed upon its payroll. While enroute to the job site there, he was paid his regular wages. The job site was located some 750 miles from Anchorage, to which point he proceeded immediately after signing the contract, thence to McGrath, Alaska, where he was to be located and perform work under his contract on a government housing or barracks project near an army base. The petitioner had a contract to construct certain improvements on this army base.

When plaintiff first arrived at McGrath, the site of his job, he was housed in a tent. There were between 300 and 400 men engaged in the construction work but not rooms for all of them in the mess hall barracks which accounts for the fact that some of them were housed in tents upon arrival, moving into rooms in the mess hall barracks as soon as rooms were made available. Under the employment contract the men were charged $5.75 per day for room and board which was provided by the contractor, the petitioner herein. The place where the work was largely carried on was on a portion of the site at Takotna 20 to 25 miles from McGrath, though unquestionably plaintiff did some of his work in and around the mess hall barracks, testifying that he carried material the day before through and over the very portion of the utilidor where he fell in the hole next day. The men were transported daily in trucks of the petitioner from McGrath to Takotna up a mountain and apparently over very rough roads, the trip requiring from one to two hours. The men lived and ate on the base, there being no other place available where food and lodging could be had.

It was on the evening of October 15, 1951, that plaintiff suffered the injuries complained of in the action he filed below. The tent which he occupied up to this time was located about 150 yards from the mess hall. Returning from the day's work on the date mentioned, the plaintiff ate his evening meal about 6:30 p. m., finishing same about 7:15 p. m. He then visited with some friends in another part of the mess hall barracks for about an hour. After this visit he started for his tent located about 150 yards northeast of the mess hall barracks. He was going there to get his clothing and take it to the room of his foreman in the mess hall barracks, the latter having agreed to share his room with the plaintiff. The most available route to this tent from the place where he had been visiting with friends was through an enclosed and unlighted walkway or utilidor which would bring him to a point of exit nearest the tent occupied by him. The walkway protected the workmen from the elements while inside it and was generally used by them going from one portion of the barracks to another.

While passing through the walkway the plaintiff fell into an open and unlighted hole from 3 to 4 feet wide and 8 to 10 feet deep, left uncovered and unlighted by plumbers who had been engaged in work on the pipes below, placed there for use in heating the barracks and the walkway as a part thereof. He alleges in his complaint serious injuries as a result of the fall. Time of his fall into the hole was about 8:00 p. m. on October 15, 1951. Following the accident the plaintiff was hospitalized in Alaska for about a month when he returned to Albuquerque at his own expense.

At the time of the accident, the relator had in force workmen's compensation insurance under the authority of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. (hereinafter referred to as Longshoremen's Compensation Act) as amended, passed by Congress for the benefit of the plaintiff and all other workmen on the job. The relator's insurance carrier offered to pay compensation in accordance with the governing provisions of the federal act but the tender of the first check for $70 representing two weeks' compensation was refused and returned.

In the complaint filed below the plaintiff seeks damages in a substantial amount from defendant in a common-law action for damages. The defendant interposed a motion to dismiss, reading as follows:

"Comes now the defendant, and moves the Court to dismiss the action herein filed by the plaintiff on the grounds that this Court is without jurisdiction in the matter, and that the jurisdiction of such matters as alleged

in the Complaint are wholly and solely within the jurisdiction of the Federal Courts.

"As a further and separate motion to dismiss said action, defendant states that the liability of the defendant, if any, is exclusively within and prescribed by the Longshoremen's and Harbor Worker's Compensation Act as amended, and that this Court is without jurisdiction in the premises.

"For grounds hereof, defendant states:

"1. That said Complaint shows upon the face thereof that the plaintiff was injured in McGrath, Alaska;

"2. That said plaintiff was employed upon said project as a carpenter;

"3. That the defendant, pursuant to a Government contract, was making certain improvements and doing work upon lands occupied or used by the United States for military or naval services in a territory or possession outside the continental United States, to-wit; Alaska;

"4. That the obligations or conditions of employment created the zone of special danger out of which the injury arose;

"5. That the exclusive jurisdiction of the Federal government in such instances attaches, irrespective of the place where the contract of hire was made or entered into.

"Wherefore, defendant prays that the Complaint of the plaintiff herein be dismissed; that the defendant be awarded its costs herein expended."

The respondent as one of the judges of the district court of Bernalillo County in which plaintiff's complaint was filed heard argument on the motion and having announced his intention to overrule the motion, the defendant below as petitioner in this court sought prohibition. We authorized issuance of an alternative writ as already mentioned. The question before us, then, is whether under the facts recited the district court of Bernalillo County had jurisdiction to proceed with the trial of plaintiff's common-law action for damages. If it did the alternative writ already issued should be discharged. If it did not, it should be made permanent.

On the eve of World War II by congressional action the protection and benefits of the Longshoremen's Compensation Act were extended to workers engaged on governmental public works without the territorial limits of the United States. In its amended form, so far as material to the determination of this proceeding, the Act reads as follows:

"§ 1651. Compensation authorized —Places of employment

"(a) Except as herein modified, the provisions of the Longshoremen's and

Harbor Workers' Compensation Act, as amended, shall apply in respect to the injury or death of any employee engaged in any employment—

"(1) at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government; or

"(2) upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States (including Alaska; the Philippine Islands; the United States Naval Operating Base, Guantanamo Bay, Cuba; and the Canal Zone); or

"(3) upon any public work in any Territory or possession outside the continental United States (including Alaska; the Philippine Islands; the United States Naval Operating Base, Guantanamo Bay, Cuba; and the Canal Zone), if such employee is engaged in employment at such place under the contract of a contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) with the United States; but nothing in this paragraph shall be construed to apply to any employee of such a contractor or subcontractor who is engaged exclusively in furnishing materials or supplies under his contract;

"(4) under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States and at places not within the areas described in subparagraphs (1), (2), and (3) of this subdivision, for the purpose of engaging in public work, and every such contract shall contain provisions requiring that the contractor (and subcontractor or subordinate contractor with respect to such contract) (1) shall, before commencing performance of such contract, provide for securing to or on behalf of employees engaged in such public work under such contract the payment of compensation and other benefits under the provisions of this chapter, and (2) shall maintain in full force and effect during the term of such contract, subcontract, or subordinate contract, or while employees are engaged in work performed thereunder, the said security for the payment of such compensation and benefits, but nothing in this paragraph shall be construed to apply to any employee of such contractor or subcontractor who is engaged exclusively in furnishing materials or sup-

plies under his contract; irrespective of the place where the injury or death occurs, and shall include any injury or death occurring to any such employee during transportation to or from his place of employment, where the employer or the United States provides the transportation or the cost thereof.

"Definition of public work

"(b) As used in this section, the term 'public work' means any fixed improvement or any project involving construction, alteration, removal, or repair for public use of the United States or its Allies, including but not limited to projects in connection with the war effort, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project.

"Liability as exclusive

"(c) The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction,

irrespective of the place where the contract of hire of any such employee may have been made or entered into.

"Definition of contractor

"(d) As used in this section, the term 'contractor' means any individual, partnership, corporation, or association, and includes any trustee, receiver, assignee, successor, or personal representative thereof, and the rights, obligations, liability, and duties of the employer under such Longshoremen's and Harbor Workers' Compensation Act shall be applicable to such contractor." 42 U.S.C.A. § 1651.

The Longshoremen's Compensation Act referred to in the text of subsections (a) and (d) is classified as Chapter 18 of Title 33, and may be further identified as 33 U.S.C.A. § 901 et seq., section 902 whereof provides:

"(2) The term 'injury' means accidental injury or death arising out of and in the course of employment * * *."

Section 903 of said Compensation Act discloses the coverage of the Act and section 904 defines the employer's liability for compensation. Section 905 in clear and concise language states that the liability of the employer "shall be exclusive and in place of all other liability of such employer to the employee," and, further:

"except that if an employer fails to *secure* payment of compensation as required by this chapter, an injured employe, * * * may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury * * *." (Emphasis added.)

We are satisfied from a review of decided cases that under the facts here present the respondent's court was without jurisdiction to entertain the plaintiff's action for damages. Cases both federal and state dealing with this very act have so held. Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754; Royal Indemnity Co. v. Puerto Rico Cement Corp., 1 Cir., 142 F.2d 237; Cataldo v. A./S. Glittre, D.C.; 41 F.Supp. 555; Moore v. Christiensen S. C. Co., 5 Cir., 53 F.2d 299; De Martino v. Bethlehem Steel Co., 1 Cir., 164 F.2d 177; Fontana v. Pennsylvania R. Co., D.C., 106 F. Supp. 461. See, also, Huhn v. Foley Bros., 221 Minn. 279, 22 N.W.2d 3. Other cases lending support to the conclusion we reach, though not dealing directly with the Longshoremen's Compensation Act are Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. ——; Taylor v. Hubbell, 9 Cir., 188 F.2d 106; Shultz v. Lion Oil Co., D.C., 106 F.Supp. 119; Peterson v. Moran, 111 Cal.App.2d 766, 245 P.2d 540; Latimer

v. Western Machine Exchange, 40 Wash. 2d 155, 241 P.2d 923.

In Royal Indemnity Co. v. Puerto Rico Cement Corp., the United States Circuit Court of Appeals for the 1st Circuit said [142 F.2d 238]:

"In the Longshoremen's Act, Congress set up a complete system of workmen's compensation with appropriate machinery for its operation and made it effective in a federal field which the states could not reach, and which the Supreme Court had held that Congress could not permit them to reach. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L. Ed. 834, 11 A.L.R. 1145.

"In describing the field in which the law should be operative,—which was the purpose of the paragraph—the language of § 3(a), called the 'Coverage' section, had to harmonize with three important decisions of the Supreme Court which preceded passage of the Longshoremen's Act; viz, Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900; Knickerbocker Ice Co. v. Stewart, supra; and State of Washington v. W. C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646.

"The clause permitting recovery only where compensation 'may not validly

be provided by state law' is not an independent condition, but a limitation upon the previous clause referring to navigable waters, necessary in view of the above decisions, and because not all injuries upon navigable waters are exclusively within federal jurisdiction. Grant, Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L. Ed. 321, 25 A.L.R. 1008; Millers' Indemnity Underwriters v. Boudreaux Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; Alaska Packers' Ass'n v. Industrial Accident Commission, 276 U. S. 467, 48 S.Ct. 346, 72 L.Ed. 656.

"Both clauses must be read together and, taken together, they describe and limit the maritime field in which the Act was first made operative, automatically adjusting what the Supreme Court has referred to as the somewhat 'shadowy limits' of that field to any situation.

\* \* \* \* \* \*

"Moreover, when the Longshoremen's Act is extended to cover injuries on land within a territory or possession of the United States, no line has to be drawn between federal and local jurisdiction. The federal power is paramount; Congress can authorize or refuse to authorize local authority to compensate for local injuries and the clause or proviso referring to local compensation that may

not be validly provided for by state (local) law has no applicable meaning.

"Any other construction would contravene the purpose of Congress in the passage of the Defense Bases law and defeat its object which was to provide a system of workmen's compensation both uniform and adequate in all the far-flung places occupied and to be occupied by the United States for military purposes. The history of the Defense Bases Act clearly shows the intention of Congress to extend the provisions of the Longshoremen's Act to defense bases without regard to local compensation laws. It was stated in House Report No. 1070, 77th Congress, First Session, that the purpose of the bill was to provide substantially the same relief to outlying territories, including and mentioning Puerto Rico, as the existing law affords employees in the United States, and to assist contractors employing labor at such bases to obtain compensation insurance at reasonable rates."

The case of Huhn v. Foley Bros., supra, presents facts very similar to those in the case at bar. Ignoring the Longshoremen's Compensation Act, the plaintiff sued his employers on the contract in a Minnesota state court to recover $138.06, the cost of a trip from Alaska to Minnesota for medical treatment, to which an appropriate commission under the Longshoremen's Act

had found him entitled. The employers invoked prohibition in the Supreme Court of Minnesota. It said [221 Minn. 279, 22 N.W.2d 8]:

"Clearly, the municipal court of the city of St. Paul has no jurisdiction over the subject matter. Relators' liability to furnish medical service for the treatment of respondent's injury arose only under the Longshoremen's Act and can be enforced only in the manner therein prescribed. See, Burns v. Millers Mutual Casualty Co., 146 Minn. 356, 178 N.W. 812; 4 Dunnell, Dig. & Supp. § 6900. Relators, by interposing an answer and a counterclaim, did not and could not thereby confer jurisdiction. In contradistinction to jurisdiction over the person, jurisdiction of the subject matter cannot be conferred by consent of the parties. 2 Dunnell, Dig. & Supp. § 2346; 1 Id. & Supp. § 476.

"Prohibition is not a writ of right, but, in the absence of another legal remedy which is reasonably efficient and adequate, issues in the discretion of the court to prevent an inferior tribunal from proceeding in a matter over which it is wholly without jurisdiction or in which it is exceeding its legitimate power and authority. It is a writ of prevention and not of correction. State ex rel. Laurisch v. Johnson, 216 Minn. 219, 12 N.W.2d

343; State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 262 N.W. 155; 5 Dunnell, Dig. & Supp. §§ 7840, 7842, 7845. In the instant case, the municipal court is wholly without jurisdiction. In our opinion, the remedy by appeal is inadequate and entirely too circuitous to be reasonably efficient in adjudicating the rights of the parties. The remedy of appeal would inevitably be fruitful of burdensome and useless delay.

"It follows that the writ of prohibition heretofore issued should be made absolute. Pursuant to Minn.St.1941, § 587.05 [M.S.A.], Mason St.1927, § 9738, the proceedings already had in the municipal court are annulled."

The case of Peterson v. Moran, supra, presents another case in which an effort to recover damages in a tort action where the state's workmen's compensation act provided a remedy was stopped by prohibition. We have held in this state that where a case falls within the purview of our workmen's compensation act, the remedy provided by it is exclusive. Guthrie v. Threlkeld Co., 52 N.M. 93, 192 P.2d 307. And we have held under facts very similar to those we have before us here, in a so-called "bunkhouse" case, that the injuries arose out of and in the course of the employment. Allen v. D. D. Skousen Const. Co., 55 N.M. 1, 225 P.2d 452. Numerous federal decisions furnish precedents show-

ing the facts of this case present a case of injuries arising out of and in the course of plaintiff's employment... See O'Leary v. Brown-Pacific-Maxon, Inc., 340 .U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; McWilliams Dredging Co. v. Henderson, D.C., 36. F. Supp. 361; Scott v. Hoage, 63 App.D.C. 391, 73 F.2d 114; Travelers Ins. Co. v. Cardillo, 78 U.S.App.D.C. 255, 140 F.2d 10.

Counsel for the plaintiff seem to appreciate the peculiar situation prevailing in this case, as an excerpt from his brief presently to follow discloses. We have the plaintiff, contrary to the position usually taken by an injured workman vigorously insisting that his injuries did not arise out of and in the course of his employment, an essential to recovery of compensation provided under authority of the Longshoremen's Compensation Act. On the other hand, and with equal vigor, we find the employer, contrary to the position ordinarily taken by employers save where liability is uncontested, contending that the workman's injuries did arise out of and in the course of employment, a fact that would render employer and its insurance carrier liable to appropriate award of compensation. True enough, the insurance carrier has filed with the Deputy Commissioner, a federal official, a denial of liability under Longshoremen's Compensation Act. Nevertheless, as disclosed by ex-

hibits in the record before us, this did not occur until plaintiff had refused to accept insurer's check covering two weeks' compensation and had filed his complaint seeking damages in a common-law action of negligence for damages, amounting to an assertion that his injuries did not arise out of and in the course of his employment.

The somewhat delicate situation thus presented by diametrically opposed contentions of the parties, as already stated, is appreciated by counsel for plaintiff who sums it up thus in one of the briefs filed in respondent's (plaintiff's) behalf, to-wit:

"We next have the very delicate problem of deciding whether the petitioners can in the federal court specifically deny that the injury sustained by the plaintiff arose out of and in the course of employment, and in this court affirmatively state that the injury *did* arise out of and in the course of employment. This truly presents a dilemma, for if this court holds that the injury did arise out of and in the course of employment, then of course the complaint will be dismissed for lack of jurisdiction, and plaintiff will then have to file his claim before the deputy commissioner in federal court. Since the petitioner has specifically denied that the injury arose out of and in the course of employment, claimant will necessarily have to prove that the in-

jury arose out of and in the course of employment. If the deputy commissioner finds that the petitioner's contention is correct, then of course the complaint must be dismissed in federal court."

It is urged upon us by counsel for respondent that notwithstanding the seemingly exclusive character of the remedy afforded by the Longshoremen's Compensation Act to workmen coming within its purview, nevertheless, that the Defense Bases Act, 42 U.S.C.A. § 1651 et seq., in extending coverage of the former act to United States territorial possessions lifted the strictness of the exclusive character of the remedy carried by the Longshoremen's Compensation Act by limiting the exclusion to actions under state compensation acts, thus rendering available to claimants actions at common law for injuries otherwise barred under the Longshoremen's Compensation Act. We think the authorities, many of which are cited, supra, show no such intent on the part of the congress. Indeed, one of the cases cited and quoted from at length by counsel for the respondent (plaintiff), Huhn v. Foley Bros., supra, holds against this contention as shown by the following quotation from that opinion, to-wit:

> "The remedy afforded employes entitled to benefits of the Longshoremen's Act is exclusive. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Warner Co. v. Norton, 3 Cir., 137 F.2d 57; Bowen v. Shamrock Towing Co., 2 Cir., 139 F.2d 674. No other liability may be asserted by employes against an employer who, subject to and in compliance with said act, makes provision to secure compensation for their benefit. Continental Casualty Co. v. Lawson, 5 Cir., 64 F.2d 802. *The exclusive nature of these remedies was not changed by the Defense Bases Act in extending their benefits to defense-base workers.* Royal Indemnity Co. v. Puerto Rico Cement Corporation, 1 Cir., 142 F.2d 237. The coverage clause, 33 U.S.C.A. § 903, is not to be so interpreted as to deprive the federal power of exclusive jurisdiction. The federal power is paramount and does not here permit the exercise of local jurisdiction. Royal Indemnity Co. v. Puerto Rico Cement Corporation and Continental Casualty Co. v. Lawson, 5 Cir., 64 F.2d 802, supra." (Emphasis supplied.)

Notwithstanding the somewhat unusual position here taken as pointed out above, the injured workman should not be made to suffer by reason thereof. It may be that he has suffered serious and permanent injury by the fall alleged. If so, he should receive compensation allowable under the Act in question commensurate with his disability. But an award of damages in a com-

mon-law action for negligence is not the place to claim the compensation to which he is entitled. The district court of Bernalillo County lacks jurisdiction of the subject matter and should not proceed further. State ex rel. Prince v. Coors, 52 N.M. 189, 194 P.2d 678. The federal jurisdiction is paramount and exclusive. Huhn v. Foley Bros., supra.

It follows from what has been said that the alternative writ heretofore issued will be made permanent. Huhn v. Foley Bros., supra.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON, and COORS, JJ., concur.