In the Matter of STERLING HOUSE, INC., Bankrupt.
No. 71–BK–542–R.

United States District Court, W. D. Virginia.
March 1, 1973.

Michael S. Ferguson, Roanoke, Va., Trustee in Bankruptcy of Sterling House, Inc., Bankrupt.

Donald A. McGlothlin, in pro. per.

## MEMORANDUM OPINION

TURK, District Judge.

The petitioner, Trustee in Bankruptcy of Sterling House, Inc., has petitioned this court to reverse the decision of the Referee in Bankruptcy allowing the unsecured claim of D. A. McGlothlin, an officer, director, and stockholder of the bankrupt corporation. The facts from the record below indicate that in October, 1970, Sterling House was incorporated under the laws of Virginia for the purpose of dealing in women's and children's shoes and clothing. Claimant, D. A. McGlothlin, who is a practicing attorney in Grundy, Virginia, handled the incorporation at the request of his sister-in-law, Mrs. Dorothy Griesier. Mrs. Griesier was named President, claimant was named Secretary-Treasurer and claimant's wife was named Vice-President. These three persons were also the sole members of the Board of Directors. The capital structure of the corporation consisted of four shares of $100 par value stock, one share each being held by claimant, claimant's wife, Mrs. Griesier, and Mrs. Griesier's husband. In addition, a note dated November 16, 1970, for $15,000 with interest at 7½%, payable on demand and signed by Mrs. Griesier as President, was given to claimant. Cancelled checks totaling $13,846.99 signed by claimant and payable either to Sterling House, Inc. or various suppliers were introduced as evidence of the $15,000 loan. Claimant testified below that some of the money advanced to Mrs. Griesier was in the form of cash of which there is no record; presumably this accounts for the difference in the $15,000 note and the amount indicated by the cancelled checks. The note bears credits of $559.92 for each of six months from November, 1970, until April, 1971, and it is the balance of $11,640.48 which the referee allowed as an unsecured claim that is in issue before this court.

There were no formal records kept of the directors or stockholders meetings. Claimant testified that he dictated the minutes authorizing the loan in question, but they were never typed up due in part to the illness and death of his son in July, 1970. Claimant stated that he had initially refused to endorse a note for the company, and only later at his wife's urging did he agree to incorporate the enterprise and make the money available to Mrs. Griesier (his wife's sister). He testified further that he retained no records of the company and had no dealings with it other than handling the incorporation and advancing the money now in issue. He stated that he never guaranteed in writing or otherwise the payment of any debts of the corporation and that he referred creditors to the company's bookkeepers.

Claimant's testimony is contradicted in part by the deposition of Mr. Robert Bens, the Regional Credit Manager of

the United States Shoe Corporation, Cincinnati, Ohio, which was a supplier of goods for Sterling House, Inc. In response to written questions by the Trustee, Mr. Bens stated that in telephone conversations with claimant in October, 1970, he was advised that one or more of the other suppliers of Sterling House, Inc. had required the personal guarantee of claimant. According to Mr. Bens, claimant further stated that he would execute and deliver such a guarantee of Sterling House, Inc.'s account in favor of United States Shoe Corporation; however, this was not deemed necessary at the time. Additionally, claimant is purported to have advised Mr. Bens that in the event additional capitalization was necessary for Sterling House, Inc., he would be in a position to contribute to it.

The question to be decided is whether, in light of the above facts, the claimant may be treated as an unsecured creditor for the balance of the $15,000 loan. In considering this claim, it is well to heed the words of Mr. Justice Douglas in Pepper v. Litton, 308 U.S. 295, 307–308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939).

> "In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. *And its duty to do so is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder.* (Emphasis added)."

There is no doubt that Sterling House, Inc. was extremely undercapitalized as is indicated by the debt to equity ratio of 37.5/1. The fact that the corporation was bankrupt in a matter of months after its inception is further evidence of its weak capital structure. The testimony of Mr. Bens indicated that Sterling House, Inc.'s account was delinquent less than four months after the date of its incorporation, and the merchandise was repossessed in April, 1971.

In addition, the loan in question was from a party whose relationship to the bankrupt was that of stockholder, director and officer. Such a loan is suspect, Costello v. Fazio, 256 F.2d 903, 911 (9th Cir. 1958), and although such a relationship does not ipso facto invalidate the loan, a person occupying a fiduciary relationship to a corporation must show the inherent fairness and good faith of the transaction involved. Spach v. Bryant, 309 F.2d 886, 889 (5th Cir. 1962). Claimant has testified to his lack of interest and participation in the enterprise in order to establish the loan as a *bona fide* arms length bargain. The referee below apparently accepted Mr. McGlothlin's position as essentially one of a disinterested creditor for in his opinion he stated, " . . . there is no evidence that he (claimant) ever, at any time, was at the store or participated in any of its affairs." The referee refers to the testimony of Mr. Bens as corroborating claimant's testimony that he never guaranteed the company's debts and referred all inquiries from creditors to the bookkeepers. It is apparent from reading the written statements of Mr. Bens that the referee either ignored or overlooked the testimony of Mr. Bens which contradicted that of claimant. As was pointed out previously, Mr. Bens has alleged that claimant offered to personally guarantee the debts of Sterling House, Inc. and contribute additional capitalization.

■ This court is required to accept the findings of the referee in bankruptcy unless it is clearly erroneous. General Order in Bankruptcy No. 47 following Bankruptcy Act, 11 U.S.C. § 53. Where findings of fact by a referee are based on conflicting evidence or where credibility of witnesses is a factor, a District Court will not hold such a finding clearly erroneous, Costello v. Fazio, 256 F.2d 903, 908 (9th Cir. 1958), but in a case such as this where conflicting written evidence has been overlooked or ignored, the factual conclusion of the referee will be reconsidered in light of such evidence.

It is also relevant to the disposition of this case that no corporate records were maintained of the disputed loan. Although there is not a showing of actual fraud on the other creditors, the evidence does demonstrate that claimant was negligent and that creditors of Sterling House might have been misled. The financial statment sent to Mr. Bens at his request for purposes of deciding whether to establish an account for Sterling House, Inc. was as follows:

"Sterling House, Inc.
Balance Sheet
21 October, 1970

Exhibit A

Assets

| | | |
|---|---|---|
| Current Assets | | |
| Cash on Deposit | $14,000.00 | |
| Stock Subscriptions Receivable | 2,000.00 | |
| Inventory | 12,000.00 | $28,000.00 |

Liabilities and Net Worth

| | |
|---|---|
| Liabilities | |
| Current Liabilities | |
| Trade Accounts Payable | 8,000.00 |
| Net Worth | |
| Capital Stock | 20,000.00 |
| | $28,000.00" |

From this balance sheet, it is not at all apparent that claimant's loan even exists, and less so that in the event of bankruptcy claimant would be on par with other creditors. This court in its discretion as a court of equity must weigh the lack of notice to the other creditors.

In summary, what we find in this case is a grossly undercapitalized corporation in which claimant, a director, stockholder and Secretary-Treasurer has asserted that a $15,000 loan to the corporation which was not properly recorded should be allowed along with the claims of other creditors. The test that is applied in such a case in which a plan is challenged as being inequitable is "whether, within the bounds of reason and fairness, such a plan can be justified." Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 315, 59 S.Ct. 543, 547, 83 L.Ed. 669 (1939); Costello v. Fazio, 256 F.2d 903, 910 (9th Cir. 1958).

And as was stated in Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) with respect to claims filed by a person standing in a fiduciary relationship, "(t)he essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." In this case, the combination of facts and circumstances surrounding the loan to claimant indicate that it would be inequitable to the other creditors to allow claimant to compete with them for the assets of the bankrupt corporation.

A court of equity will not permit an owner of an enterprise to shift the inherent risks of that enterprise to ordinary creditors. Judge Learned Hand in the case of In re V. Lower's Gambrinus Brewery Co., 167 F.2d 318, 320 (2d Cir. 1948), stated the proposition as follows:

"Both the shareholders and creditors in any enterprise assume some risk of its failure, but their risks are different. The shareholders stand to lose first, but in return they have all the winnings above the creditors' interest, if the venture is successful; on the other hand the creditors have only their interest, but they come first in distribution of the assets . . . If in such a case they (shareholders) are allowed to prove in insolvency on a parity with other creditors, as shareholders of the debtor they can use their control to take all the winnings which may be made on their advances while the company is successful, yet they will expose themselves only to creditors' risks, if it fails. That is unfair to other creditors regardless of whether they know that the shareholders of the debtor corporation have this power through their common ownership; for every creditor rightly assumes that his risk is measured by the collective claims of other creditors, and by creditors he understands those alone, who like him, have only a stipulated share in the profits. To compel him to divide the assets in insolvency with those who at their option have all along had power to take all the

earnings, is to add to the risk which he accepted."

In this case the facts show that claimant and his wife shifted the ordinary risks of the business to the creditors without properly making a record of the loan or indicating its status in the event of bankruptcy. With a nominal investment of $200.00 claimant and his wife owned 50% of the enterprise, and had it succeeded they would have prospered accordingly. But since it failed, they must accept the fact that they gambled and lost.

The referee in his opinion below allowing the claim relied in part on the conclusion that claimant in no way participated in the affairs of Sterling House, Inc. except to the extent of organizing it and advancing funds represented by the note. Disregarding for the moment that the evidence does not necessarily support this conclusion and accepting arguendo that claimant was not actively engaged in the management of the corporation, it would nevertheless be inequitable to allow him to compete on a parity with the other creditors of the corporation. Claimant's position as substantial stockholder, member of the board of directors, and Secretary-Treasurer of the corporation charged him with knowledge of the affairs of the corporation and made dealings between him and the corporation inherently suspect. *See* Pepper v. Litton, *supra* at 308, 60 S.Ct. 246; Braddy v. Randolph, 352 F.2d 80, 83 (4th Cir. 1965). In referring to dealings by directors or dominant stockholders with their own corporation, Mr. Justice Douglas in Pepper v. Litton, *supra* at 306, 60 S.Ct. 245, stated that ". . . the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of . . . those interested therein." The facts in this case compel the conclusion that claimant has not demonstrated the inherent fairness of the loan transaction.

For the foregoing reasons, the decision of the Referee in Bankruptcy allowing the claim of D. A. McGlothlin will be reversed and the balance due in claimant's note is subordinated to the claims of the other creditors.