In re FETT ROOFING AND SHEET METAL CO., INC., Bankrupt.

Donald M. FETT, Appellant,

v.

William R. MOORE, Trustee, Successor to Sidney Siegel, Trustee, Appellee.

No. 76–1116–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Sept. 10, 1977.

Louis H. Cohn, Norfolk, Va., for appellant.

Lawrence H. Glanzer and Stuart L. Nachman, Steingold, Steingold & Nachman, Norfolk, Va., for appellee.

## OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on the appeal by plaintiff from an order of United States Bankruptcy Judge Hal J. Bonney, Jr., which dismissed plaintiffs' complaint, subordinated the note claims of the plaintiff to the claims of all other creditors and set aside deeds of trust which purported to secure the note claims. Appellant contends that the Bankruptcy Judge's findings of fact and conclusions of law were completely erroneous and that appellant's claims against the bankrupt should be reinstated. Jurisdiction of this Court is based on 28 U.S.C. § 1334; Bankruptcy Act §§ 38, 39(c), 11 U.S.C. §§ 66, 67(c); and Bankruptcy Rule 801.

### The Facts

The record below discloses that the bankrupt, Fett Roofing and Sheet Metal Co., Inc., was owned and run prior to 1965 by plaintiff herein, Donald M. Fett, Sr., as a sole proprietorship. During 1965, Mr. Fett incorporated his business, transferring to the new corporation assets worth $4,914.85 for which he received 25 shares of stock. The stated capital of the corporation was never increased during the course of the corporation's existence. Mr. Fett was the sole stockholder and also the president of the corporation. The roofing business continued to be run completely by Mr. Fett much as it had been prior to its incorporation. In short, Fett Roofing was a classic "one-man" corporation. Over the years, plaintiff advanced money to his business as the need arose. Three of these transactions made in 1974, 1975 and 1976 involved the transfer to the corporation of $7,500, $40,000 and $30,000, respectively. In each instance plaintiff borrowed from the American National Bank, made the funds available to his business and took back demand promissory notes. On April 6, 1976, at a time his business had become insolvent, plaintiff recorded three deeds of trust intended to secure these notes with the realty, inventory, equipment and receivables of Fett Roofing and Sheet Metal Co., Inc. The deeds were backdated to indicate the dates on which the money had actually been borrowed. On November 8, 1976, an involuntary petition in bankruptcy was filed.

After a trial in which both sides presented considerable evidence and the plaintiff personally testified regarding his claim, Judge Bonney made the following findings of fact.

1. The bankrupt was undercapitalized at its inception in 1965, and remained undercapitalized throughout its existence. The capital necessary for the operation and continuation of its business was provided by the complainant in the form of so-called loans on an "as-needed" basis. Promissory notes, including the three involved herein, were given to the complainant in the course of such transactions.

2. The three deeds of trust which purport to secure the said notes were all back-dated to create the impression that they were executed contemporaneously with the advance of funds and the giving of the notes; all three were in fact executed and recorded during the first week of April 1976, when the notes were, by their terms, past due.

3. The purpose of the deeds of trust was to delay, hinder, and defraud the creditors of the bankrupt, and to give the complainant a preference over them, in the event a liquidation of assets became necessary.

4. Complainant was in sole control of the affairs of the bankrupt, and was its sole stockholder. His interests were at all times identical to and indistinguishable from that of the bankrupt; he was the *alter ego* of the bankrupt.

5. At the time these three deeds of trust were executed and recorded, the bankrupt was, and for several months

had been, unable to meet its obligations as they came due in the ordinary course of business. Many of the debts listed in the schedules filed by the bankrupt were incurred and delinquent prior to April 1976.

6. Complainant knew that his corporation was insolvent no later than February 1976.

Based on these findings, Judge Bonney concluded that the advances made by plaintiff to his corporation were actually contributions to capital, not loans, and that claims based on them therefore should be subordinated to those of all the other creditors of the bankrupt. The Judge further found that even if the transfers had been *bona fide* loans, the deeds of trust intended to secure them would have been null and void as having been given with actual intent to delay, hinder and defraud creditors in violation of § 67d(2)(d) of the Bankruptcy Act, 11 U.S.C. § 107(d)(2)(d). In addition, Judge Bonney determined that such loans were given in fraud of creditors under state law and therefore were voidable under § 70(e) of the Bankruptcy Act, 11 U.S.C. § 110(e).

Because we have concluded that the Bankruptcy Judge was correct in his determination that the plaintiff's transfers of money to his corporation were capital contributions and not loans we do not consider the soundness of the last two legal findings.

*The Law*

■ At the outset the Court notes that a Bankruptcy Judge's findings of fact will be accepted unless "clearly erroneous." Bankruptcy Rule 810. In examining the entire record, the opinion and order of the Judge below and the briefs and oral argument of the parties, the Court is satisfied that substantial evidence supports the findings of fact of the Bankruptcy Judge and as they are not clearly in error, they will not be disturbed. *In re Madelaine*, 164 F.2d 419, 420 (2d Cir. 1947).

■ Although the Court is not bound by the Bankruptcy Judge's conclusions of law and is free to make its own legal deductions, *East Coast Electronics, Inc. v. Walter*

*E. Heller & Co.*, 355 F.2d 923 (5th Cir. 1966), an analysis of the particular facts of this case and the relevant authorities clearly shows that the determination that plaintiff made capital contributions to the bankrupt rather than loans is legally sound.

■ A director, officer, majority shareholder, relatives thereof or any other person in a fiduciary relation with a corporation can lawfully make a secured loan to the corporate beneficiary. *Faucette v. Van Dolson*, 397 F.2d 287 (4th Cir.), *cert. denied*, 393 U.S. 938, 89 S.Ct. 301, 21 L.Ed.2d 274 (1968). However, when challenged in court a fiduciary's transaction with the corporation will be subjected to "rigorous scrutiny" and the burden will be on him ". . . not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425 (1921). *See also, Twin-Lick Oil Co. v. Marbury*, 91 U.S. 587, 23 L.Ed. 328 (1875).

■ Where a director or majority shareholder asserts a claim against his own corporation, a bankruptcy court, sitting as a court of equity, will disregard the outward appearances of the transaction and determine its actual character and effect.

Similar results have properly been reached in ordinary bankruptcy proceedings. Thus, salary claims of officers, directors and stockholders in the bankruptcy of "one-man" or family corporations have been disallowed or subordinated where the courts have been satisfied that allowance of the claims would not be fair or equitable to other creditors. And that result may be reached . . . where on the facts the bankrupt has been used merely as a corporate pocket of the dominant stockholder, who, with disregard of the substance or form of corporate management, has treated its affairs as his own. And so-called loans or advances by the dominant or controlling stockholder

will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder not only in the foregoing types of situations but also where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operation of the company being furnished by the stockholder as a loan.

*Pepper v. Litton, supra* 308 U.S. at 308–310, 60 S.Ct. at 246.

■ The record on this appeal reveals the bankrupt to have been a large construction contractor requiring ample amounts of capital. As indicated above, the corporation was capitalized at slightly under $5,000 when it was created in 1965. No increment to this initial amount was ever formally made. According to the schedule filed with the Bankruptcy Judge, the bankrupt's debt to secured creditors alone stood at $413,000. This is a debt-to-equity ratio of over 80 to 1. While this fact by itself will not serve to convert what is otherwise a *bona fide* loan into a contribution to capital, it does cast serious doubt on the advances by a person in plaintiff's special situation being considered debt rather than equity. The fact that no evidence was adduced by plaintiff to show that the "borrowings" in question were formally authorized by the corporation or that interest was ever paid on them, coupled with the undisputed day-in-and-day-out control over corporate affairs wielded by plaintiff, as president and sole stockholder leave little doubt that plaintiff, ignoring corporate formalities, was infusing new capital into his business and avoiding such necessities as charter amendment or the issuance of new stock. The record discloses that the funds transferred to the corporations were used to finance the acquisition of equipment and material necessary to the functioning of the business. Although one of the advances was used to pay a *bona fide* tax liability, this does not affect its character as a capital contribution under the particular circumstances of this case. *In re Trimble Co.*, 479 F.2d 103, 115 (3d Cir. 1973). The fact that plaintiff at various times characterized these advances as "recapitalization" can only reinforce a conclusion which consideration of the entire record makes inevitable.

The Courts of this circuit have had no reluctance to pierce through surface appearances in these matters and distinguish contributions to capital from genuine loans. In *Braddy v. Randolph*, 352 F.2d 80 (4th Cir. 1965), a case with some striking similarities to the present dispute, the plaintiff, president, director and a principal stockholder of a bankrupt corporation, filed four claims based on four notes secured by deeds of trust. In affirming the rejection of these claims, the Court of Appeals stated:

> To finance this volume and to keep the business going even though operating at a loss, the Bankrupt borrowed heavily and constantly from the four officers and the North Carolina National Bank (hereinafter Bank). The money which officers, Braddy, Zeliff, Craft and Foster, "loaned" the Bankrupt was normally acquired from the Bank by use of their personal credit and personal assets. Based on the volume of business and the fact that the Bankrupt began borrowing from the officers and the Bank at the outset of operations, we think the referee and court could reasonably conclude that these "loans" were necessitated by the initial insufficiency of the Bankrupt's equity capital and that the "loans" made by the officers were, in effect, contributions to capital. *Securities & Exchange Com'n v. Liberty Baking Corp.*, 240 F.2d 511, 515 (2 Cir. 1957). Rather than invest more capital the officers and stockholders, by the use of the borrowed funds, substantially shifted and evaded the ordinary financial risks connected with this type of business enterprise and, at the same time, permitted the corporation to remain in a constant state of or in imminent danger of insolvency.

Similarly in *L & M Realty Corp. v. Leo*, 249 F.2d 668 (4th Cir. 1957), the Court of Appeals subordinated the claim of a principal shareholder, noting:

> While the amounts thus advanced were treated by the stockholders as loans to

the corporation and it was not contemplated that stock was to be issued in payment of them, it is clear that they were not loans in the ordinary sense and were not intended to be paid in ordinary course, as were the claims of other creditors. The corporation was not adequately capitalized, the advancements were made shortly after it was organized and no steps were ever taken looking to their repayment. They were made in approximately equal amounts by the two stockholders owning the corporation, who actually paid other creditors in priority to themselves year after year, no interest was ever paid on them and the evidence is that the money was advanced as loans rather than as subscription to stock in the thought that this would be helpful for income tax purposes. In such situation, while the loans are not to be treated as investments in stock, it is clear that they were capital contributions to a corporation inadequately capitalized and that, having been made by the two stockholders, who completely owned and controlled the corporation, they should be subordinated to the claims of other creditors.

*See also, International Telephone and Telegraph Corp. v. Holton,* 247 F.2d 178 (4th Cir. 1957); *In re Sterling House, Inc.,* 356 F.Supp. 1113 (W.D.Va.1973). Cf. *Freeman v. Swink,* 261 F.2d 84 (4th Cir. 1958).

■ Although the advances contested here were made well after the corporation was created, there is evidence in the record that plaintiff had "loaned" the bankrupt money over the years and that the transfers here in issue were only the latest in a series of contributions made necessary by the corporation's grossly inadequate capitalization. Since these three transactions were "part of a plan of permanent personal financing," the fact that they did not occur at the outset of corporate existence is not crucial and the claims based on them are properly subordinated to those of other creditors. *Boyum v. Johnson,* 127 F.2d 491, 494 (8th Cir. 1942); *Duberstein v. Werner,* 256 F.Supp. 515 (E.D.N.Y.1966).

■ Since the transfers made by plaintiff to the bankrupt were, in contemplation of law, capital contributions the deeds of trust purporting to secure these advances were properly set aside since there was in fact "no debt to be secured." *Arnold v. Phillips,* 117 F.2d 497, 501 (5th Cir. 1941).

■ As the cases make clear, no one fact will result in the determination that putative loans are actually contributions to capital. The Court is guided by equitable principles that look to the result of the transaction as well as to the formal indicia of its character. A person in the special position of the plaintiff ". . . cannot by the use of the corporate device avail himself of the privileges normally permitted outsiders in a race of creditors." *Pepper v. Litton, supra,* 308 U.S. at 311, 60 S.Ct. at 247. It is not necessary that fraud, deceit or calculated breach of trust be shown. Where, as here, a corporate insider, indeed the corporate alter ego has so arranged his dealings with his corporate principal that he achieves an unfair advantage over outside creditors dealing at arms length, the Court will subordinate his claim to theirs. *Pepper v. Litton, supra; In re Trimble Co., supra; Costello v. Fazio,* 256 F.2d 903 (9th Cir. 1958); *Goldie v. Cox,* 130 F.2d 695 (8th Cir. 1942); *Boyum v. Johnson, supra; Arnold v. Phillips, supra; In re Dean and Jean Fashions, Inc.,* 329 F.Supp. 663 (W.D.Okl.1971); *In re Regency,* 96 F.Supp. 535 (D.N.J.1951); *3 A Collier on Bankruptcy* § 63.06 at 1797 (14th ed. 1975).

In summary, the Court has accepted the Bankruptcy Judge's findings of fact pertaining to the nature of the advances made by plaintiff and the nature of the corporation as plaintiff's alter ego, as supported by substantial evidence and not clearly erroneous. Further, it finds ample support in the facts and in the relevant authorities for treating plaintiff's advances to the bankrupt as contributions to capital and not as loans.

For the foregoing reasons, the Order appealed from is AFFIRMED.