In re NEW MADRID NURSING HOME, INC., Debtor.

OFFICIAL CREDITORS COMMITTEE, Swink & Co., Inc., and First State Bank of Caruthersville, Appellants,

v.

James R. BLADES, Blades Incorporated, and Consolidated Housing Development and Management Inc., Appellees.

Nos. S87–0010C, S87–0011C.

United States District Court, E.D. Missouri, Southeastern Division.

May 12, 1987.

Isaac A. Scott, Jr., Charles L. Schlumberger, Little Rock, Ark., James E. Reeves,

Caruthersville, Mo., Lloyd A. Palans, Clayton, Mo., for appellants.

Lem T. Jones, Jr., Kansas City, Mo., Jerome I. Kaskowitz, St. Louis, Mo., Deborah Weedman, Clayton, Mo., James L. Needler, Chicago, Ill., for appellees.

## MEMORANDUM AND ORDER

WANGELIN, District Judge.

This matter is before the Court on appeal from the United States Bankruptcy Court.

New Madrid Nursing Home, Inc. ("New Madrid" "Debtor") filed its voluntary Chapter 11 petition on July 18, 1983. On January 26, 1985, the Court denied a plan of reorganization proposed by Debtor and instead confirmed one proposed by Beverly Enterprises, Beverly Enterprises-Missouri, Inc., and Swink & Co., Inc. The confirmed plan provided for sale of the Debtor's assets and effectively ousted Debtor from possession of its property.

The confirmed plan also provided that the claims of James R. Blades ("Blades"), Blades Inc. and Consolidated Housing and Management Co., Inc. ("Consolidated") would be subordinated to those of the general unsecured creditors, unless pending litigation determined otherwise. If the litigation determined that these claims should not be subordinated, then they would be paid in accordance with Class 4 claims, the claims of undisputed, unsecured creditors who were to be paid in full. The pending litigation referred to in the plan consists of two complaints filed by the Official Creditors' Committee, Swink & Co., Inc. and First State Bank of Caruthersville against Blades, Blades Inc. and Consolidated on May 21, 1984. By one complaint, Appellants sought to subordinate Appellees' claims against the estate to those of the general unsecured creditors. By the other complaint, Appellants sought to avoid and recover what they allege to be preferential transfers from the Debtor to Appellees.

Both complaints were tried on September 12, 1984. Based upon the evidence adduced at trial, the parties' briefs, and all other matters of record, the Court concluded that Appellees' claims should not be subordinated and that the complained of transfer cannot be avoided. Appellants now bring this appeal.

## JURISDICTION

Rule 8013 of the Bankruptcy Rules provides appeal as a matter of right from a final judgment of the bankruptcy judge to the District Court.

## STANDARD OF APPELLATE REVIEW

Bankruptcy Rule 8013 states: "On an appeal, the District Court or Bankruptcy Appellate Panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

## FACTUAL BACKGROUND

The complaints were brought by the Official Creditors' Committee, Swink & Co., Inc., and the First State Bank of Caruthersville. Swink & Co., Inc., a proponent of the confirmed plan of reorganization, served as the underwriter of an Industrial Development Bond issue used as part of the initial financing of Debtor. In addition, Swink & Co. served as Financial Adviser in regards to the same bond issue. First State Bank of Caruthersville was and remains a bondholder and the Trustee for all bondholders, under the same bond issue.

The three Appellees are all insiders of the Debtor. Debtor was wholly owned by Blades Inc., a corporation which is itself wholly owned by Blades and his immediate family. Consolidated is yet another family owned corporation. Not surprisingly, Blades himself was at all relevant times President and Chief Executive Officer of the family corporations, while his wife and children held the other corporate offices. The Boards of Directors of all the family corporations also consisted of members of the Blades family. In short, Blades was in a position to and did at all relevant times

control not only the Debtor, but also Appellees Blades Inc. and Consolidated.

In December 1980, Blades incorporated the Debtor, New Madrid. The business of the corporation was to be a nursing home. After incorporation, New Madrid authorized and issued two hundred fifty (250) shares of stock at one dollar ($1.00) per share. All two hundred fifty of these shares were subsequently purchased by Blades Inc., although this transaction existed solely "on the books" with no funds actually changing hands. Thus, New Madrid was initially capitalized in the nominal amount of two hundred fifty dollars ($250.00).

In order to finance the construction of the nursing home facility and the purchase of other needed "hard" capital assets, Debtor entered into a Contract and Loan Agreement with the Industrial Development Authority of New Madrid, Missouri ("IDA"). Under the terms of the agreement, IDA floated a bond issue, underwritten by Swink & Co., Inc., and loaned the proceeds to Debtor.

Debtor also agreed to secure two hundred thousand dollars ($200,000.00) prior to closing the sale of the bonds. This amount was to be "in any combination of cash, bank line of credit, and bank letter of credit", and was to be used by Debtor to meet its operating costs until medicaid payments were received and the nursing home had filled to a sufficient patient count to break even.

Debtor received the $200,000.00 from Blades, Blades Inc., and Consolidated in the form of "working capital loans." Although the loans from the corporate defendants were specifically authorized at a joint meeting of the Boards of Directors of Blades Inc. and Consolidated and were recorded as such on the books of the family corporations, neither the loans from Blades Inc. and Consolidated, nor the loan from Blades himself were evidenced by debt instruments of any sort. Moreover, these loans were interest free and had no set payment period, being payable on demand.

These "working capital loans" were deposited in Debtor's account at the Missouri State Bank. The nursing home began operations on September 1, 1982. Although Debtor had projected working capital requirements for the first year of operation to be $200,000.00, by the end of 1982 Debtor had already suffered losses in excess of $300,000.00. On July 18, 1983, Debtor filed for reorganization under Chapter 11. Debtor listed Blades, Blades Inc. and Consolidated as unsecured creditors in the schedules accompanying its petition in the amounts of $32,905.56, $184,118.58 and $11,940.00, respectively. On May 15, 1984, Swink & Co., Inc. demanded by letter that Debtor file an adversary proceedings to subordinate Defendants' claims. Debtor refused, and Appellants jointly filed the underlying litigation.

## STATEMENT OF THE ISSUES

Appellants contend that (1) the Appellees' "working capital loans" were actually capital contributions requiring subordination of Appellees' claims; (2) that the Debtor was undercapitalized at the outset of operations, and that therefore Appellees' "working capital loans" should be subordinated under 11 U.S.C. § 510(c); and (3) that if the bankruptcy court's decision not to subordinate Appellees' claims is overruled by this Court, then the preferences issue should be reinstated and proceeded upon. The bankruptcy court has ruled against the Appellants on all of their issues. The Appellees believe that the court below properly ruled on the law and the facts in its memorandum opinion and order.

## CAPITAL CONTRIBUTION

■ The Court finds that the bankruptcy judge was not clearly erroneous in determining that the Appellees advanced "working capital loans" to the Debtor; and therefore, the $200,000.00 was debt rather than equity.

Appellants cite multiple criteria which is to be evaluated in determining whether loans should be characterized as capital contributions. See, Appellants' Brief p. 9; citing, *Fett v. Moore*, 438 F.Supp. 726 (E.D. Va.1977). Without great detail, this Court finds that:

1. There are no indications of fraud or bad faith.
2. Debtor's debt-equity ratio was not unreasonably high.
3. Appellees observed corporate formalities.
4. Appellees and Debtor all acknowledged the debts and characterized the funds as loans.
5. Capitalization of Debtor is, at best, a questionable assertion.

While the Court recognizes that the bankruptcy court did not specifically address each and every one of the cited criteria in his opinion, the Court believes that he did consider the transaction as a whole, including the relationships between the Debtor and the Appellees. Because the bankruptcy judge considered both the result of the transaction as well as the formal indicia of its character, this Court cannot say that his decision was clearly erroneous.

### UNDERCAPITALIZATION

Likewise, the Court cannot find that the bankruptcy judge was clearly erroneous in determining that the Debtor was not undercapitalized. Therefore, the bankruptcy judge's decision not to apply the principles of equitable subordination must be upheld.

It is clear from the record on appeal that only two financial experts testified. Further, said experts' testimony was uncontroverted at trial. Both testified that a healthy or strong nursing home would have an assets to liability ratio of over 1 to 1, and that the average or normal ratio would be around 1.5 to 1. The Debtor's ratio was either .42 to 1 or .9 to 1, depending upon the formula used. Although it is clear that the Debtor was in financial trouble, both experts testified that the Debtor was not undercapitalized; and that capital structures, such as this, are common.

Based upon this uncontroverted testimony, the bankruptcy judge had no choice but to find that the Debtor was not undercapitalized to the extent necessary to invoke equitable subordination.

### CONCLUSION

Based upon the foregoing, the Court finds that there was substantial evidence to support the bankruptcy judge's decisions; and as such, said decisions were not clearly erroneous. Therefore, the decisions of the bankruptcy judge in the above-styled matters shall be and are AFFIRMED.

IT IS SO ORDERED.